Zenos H. O'KELLY, Appellant,

v.

L. C. JACKSON et al., Appellees.

No. 876.

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 21, 1974.

Rehearing Denied Dec. 19, 1974.

Guy H. Allison, Allison, Maddin, White & Brin, S. E. Dyer, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellant.

Charles G. Lyman, Lyman & Sudduth, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for damages resulting from a partial head-on collision between an automobile and a motorcycle. L. C. Jackson and Mary Lynette Jackson, the minor daughter of L. C. Jackson, sued Zenos H. O'Kelly for property damages to the auto-

mobile which was owned by L. C. Jackson, and for personal injuries which were sustained by Mary Lynette Jackson (Miss Jackson) in the accident. Miss Jackson was driving the automobile and O'Kelly was driving the motorcycle at the time of the occurrence in question. The defendant, in addition to a general denial, filed a cross-action to recover for personal injuries and property damage sustained by him in the accident. Trial was to a jury. A take nothing judgment was rendered as to all parties. O'Kelly, defendant and cross-plaintiff, has appealed.

The jury found that appellant failed to keep a proper lookout and that such failure was a proximate cause of the collision. Appellant, in points 1 to 8, challenges the submission of those issues and the jury's answers in response thereto with "no evidence", "factually insufficient evidence", and "against the great weight and preponderance of the evidence" points. The Jacksons, plaintiffs and cross-defendants in the trial court, did not appeal from the portion of the judgment which was adverse to them.

■■ A "no evidence" point presents a question of law, and in deciding that question, we consider only the evidence and the inferences tending to support the jury's finding and disregard all evidence and inferences contrary thereto. Butler v. Hanson, 455 S.W.2d 942, 944 (Tex.Sup.1970). The "factually insufficient evidence" and the "against the great weight and preponderance of the evidence" points present factual questions as opposed to law questions, and they require us to consider and weigh all of the evidence in the record. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). We first review the evidence and the inferences reasonably drawn therefrom in the light most favorable to the appellees with respect to the submission of the questioned issues and the jury's answers thereto, and we disregard all evidence and inferences to the contrary.

■■ The collision in question occurred in the inside lane for southbound traffic on Alameda Street, Corpus Christi, on September 2, 1971, at about 9 p. m. The headlights of both vehicles were on at that time. The point of impact was a few feet south of the intersection of Alameda Street and Robert Drive. Alameda extends generally north and south, and Robert Drive extends generally east and west. At the place of collision, Alameda is divided into five lanes; the east two lanes carry northbound traffic and the west two lanes carry southbound traffic; the center lane is a turning lane for vehicles travelling north on Alameda and turning left on Robert. The intersection of Alameda and Robert is a 69 degree intersection for vehicles proceeding north on Alameda. The portion of Robert, measured from north to south, which crosses Alameda is 30 feet in width.

Immediately preceding the accident, appellant, who had been parked in the parking lot of Dunkin' Donuts (located on the west side of Alameda), left the parking lot on his motorcycle and turned south into the outside lane of Alameda. He later changed into the inside lane and was travelling south in that lane when the collision took place. At about the same time, Miss Jackson was proceeding north in the inside lane for northbound traffic on Alameda. She intended to turn left on Robert. At some undetermined place on Alameda, she activated the left turn signal on the automobile, entered the left turn lane, slowed down, and was in the process of turning left into Robert when the automobile which she was driving collided with appellant's motorcycle. At the place of impact, the automobile was almost completely out of the left turn lane and into the inside lane for southbound traffic. Its right rear was slightly in the left turn lane and its left front was barely in the outside lane for southbound traffic. The automobile, in its angled position, occupied all of the inside lane. The front wheel of the motorcycle struck the front portion of the automobile. The intersection is controlled

by a traffic signal light. The light facing appellant was green when he entered the intersection and the light facing Miss Jackson was also green when she started her turning movement in the left turn lane.

There were no obstacles in the street that impaired visibility or restricted the field of vision of either appellant or Miss Jackson. Weather conditions were good and traffic was moderate. The intersection of Alameda and Robert is about 300 feet south of Dunkin' Donuts.

Appellant testified as follows: as he drove out of the Dunkin' Donuts driveway onto Alameda, a car, proceeding south in the outside (curb) lane of Alameda, passed in front of him and he "pulled out behind it"; he did not pass that car; at that time there was another car in the inside lane which was also travelling south on Alameda; this car was to his left as he left the Dunkin' Donuts driveway; the car passed him, and he then pulled over into the inside lane; as he continued south in the inside lane, he remained between 30 and 40 feet behind the car that was in front of him; the rear of that car cleared the intersection about the time he entered it; he did not see the Jackson automobile until he was from one-third to halfway through the intersection, which was after the car that had been in front of him had already passed the Jackson automobile; when he first saw the Jackson vehicle it was in motion and was angling left into his lane of traffic. He was asked the question:

"Was there anything that prevented you from seeing her any earlier?"

He replied:

"I guess if I had been looking for her, I would have probably could have seen her through the car in front of me."

Appellant said that he was driving at 30 miles per hour at the time in question. He told the jury that just before he entered the intersection he checked the traffic signal light to make sure he still had the green light and "then I was concentrating on the vehicle in front of me." He agreed that a person driving a motorcycle should maintain a position in the roadway where he could observe conditions at least three vehicles' lengths ahead of him, which would be about 54 feet. He further agreed an operator of a motorcycle should be prepared to yield to an automobile since a motorcycle is sometimes difficult for an automobile driver to see. The only two things that he did when he saw the Jackson automobile was to decelerate and attempt to apply his brakes.

Miss Jackson testified that she was travelling north in the inside lane on Alameda at about 35 miles per hour, slowed down before getting into the left turn lane, and turned her left signal light on about a half car length before she entered the turning lane. She looked north along Alameda before commencing the left turn and saw cars stopped for the red traffic light at the intersection of Alameda and Everhart, which intersection is about a block north of the intersection of Alameda and Robert. As she entered the left turn lane, she noted that the traffic that had been stopped at the intersection of Alameda and Everhart had started moving. She did not recall that an automobile passed her on her left in the inside traffic lane while she was in the left turn lane. She said that she was travelling between 8 and 10 miles per hour as she began her left turn and that she did not speed up prior to impact. Her automobile was moving at the time and place of impact.

Two witnesses, Darrell P. Thompson and Patrick Lee Goodman, were standing in the parking area of Cap'n Syd's, a business establishment between Dunkin' Donuts and the intersection of Alameda and Robert, when appellant left the Dunkin' Donuts parking area. Both saw him enter Alameda. Thompson said that there were no cars in either of the southbound lanes when appellant "got out on Alameda Street". Goodman did not recall seeing any other cars in either of the southbound lanes of Alameda when appellant drove out into that street.

John Bentley, an expert in the field of reconstruction of motor vehicle accidents, testified. He analyzed photographs made by others and made various measurements of the roadway, markings, curve radius and final positions of both the automobile and the motorcycle. He personally inspected both vehicles after they had been removed from the scene of the accident. He considered the damage to each vehicle in making his evaluations and conclusions. He calculated the speed of the motorcycle to be 40.25 miles per hour and that of the automobile to be 7.4 miles per hour. He further concluded that at those speeds, the motorcycle moved 59 feet in each second and the automobile moved 10.85 feet per second. After determining the attitudes of the two vehicles at both collision point and at final point, he stated that the automobile would have travelled "47 feet in its turn up to collision point". He further stated: "since I arrived at 10.85 feet per second, we're talking in terms of 4.33 seconds for it (the automobile) to travel this distance in its turn"; and, "the motorcycle, during this period of time, would travel 255.5 feet at the 59 feet-per second". He also said that the total stopping distance for the motorcycle travelling at 30 miles per hour, including reaction time, would be 90.6 feet.

Bentley further testified that a motorcycle can be steered to the right or left even though the brakes are on because the front wheel brakes do not lock, that appellant did have time to turn to the right, and that if appellant had reacted to the change of direction caused by the left turn of the Jackson automobile he could have avoided the accident.

Appellee also introduced in evidence a scaled plat of the scene of the accident. It was prepared by Bentley, and, in his words, was "based on the measurements at the scene, and the evaluation of photographs and damage to the vehicles". The plat shows the intersecting streets, their widths at and near the occurrence in question, the several lanes of traffic, the position of the vehicles at impact, where each

vehicle came to a stop following the collision, and the arc followed by Miss Jackson in making the turn. The plat shows that the distance from the commencement of the turn in the turning lane to the point of impact is 47 feet.

▮ Even though appellant had the right of way, he was under a duty to take evasive action (or his failure to take evasive action was negligence) after, but only after, Miss Jackson, who did not have the right of way, did something which would alert a reasonably prudent person to the danger of a collision if evasive action was not taken. Skyline Cab Company v. Bradley, 325 S.W.2d 176 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); Pittman v. Licerio, 496 S.W.2d 676 (Tex.Civ.App.—Corpus Christi 1973, no writ).

▮ With respect to the collision here involved, the failure of appellant to keep a proper lookout for the Jackson automobile is a proximate cause of the occurrence in question only if such lookout would have revealed something which would have alerted him to the danger of a collision at a time when he was a sufficient distance from the point of collision that, at the speed he was going, he could have taken evasive action which would have avoided the accident. Thornton v. Campise, 459 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.); Taylor v. Brooks, 392 S.W.2d 878 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); Padilla v. Chambers, 464 S.W.2d 417 (Tex.Civ.App.—El Paso 1971, no writ).

▮ The failure to keep a proper lookout which proximately caused the accident may be established by circumstantial as well as by direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). The evidence and the inferences which can reasonably be drawn therefrom support the jury's finding that appellant did not keep a proper lookout. There was no obstruction in the street which prevented appellant from seeing the Jackson automobile when it began its turning movement. Miss Jack-

son was able to see north on Alameda to a point north of and beyond Dunkin' Donuts. Appellant admitted that if he had been looking for the Jackson automobile he could have seen it prior to the time that he did see it. It must be assumed from the facts in evidence that the jury could have drawn the inference that appellant, as he drove south on Alameda from Dunkin' Donuts to the point of impact, a distance of about 330 feet, did not keep that character of lookout as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances.

■ In order to sustain a jury finding that the failure to keep a proper lookout was a proximate cause of the collision, it must have been foreseeable by the actor in time for him to have avoided the accident by evasive action and but for such failure the collision would not have occurred. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951). As related to this case, in order for appellant's failure to keep a proper lookout to be a proximate cause of the collision he must have failed to see something that he should have seen and which would have alerted him to the danger that the Jackson automobile might turn out of the turning lane in front of him under such circumstances, considering time, distance and speed, that he could have avoided the collision.

Appellant should have reacted to the change in the automobile's direction of movement by evasive action, since it was foreseeable that a collision could and would occur if the Jackson automobile continued in its changed direction of movement. There was evidence beyond a scintilla that appellant should have seen the automobile begin its turning movement in the turning lane at a time when he was at a sufficient distance north of the point of impact that he could have, at the speed he was going, taken evasive action which would have avoided the accident.

There is evidence that appellant, had he kept a proper lookout, could have stopped his motorcycle before reaching the point of impact or could have turned to the right, either of which would have avoided the accident. The two essential elements of proximate cause, foreseeability and causation, are established by the evidence. Viewing the evidence and the inferences reasonably drawn therefrom in the light most favorable to the jury's finding, we hold that there was ample evidence from which the jury could have found that appellant did not keep a proper lookout for the automobile, and that such failure was a proximate cause of the accident. Appellant's "no evidence" points are overruled.

The only other witness who testified to matters relating to the accident was Mr. Martin E. Harrison, who was on the Dunkin' Donuts premises when appellant drove away. He watched appellant leave the parking area. He said that appellant hesitated as he went off the curb and then turned into the right lane because he had to wait on a car. He stated that he saw a car travelling south in the inside lane and that appellant fell in behind that car. He did not see the actual collision. He did not see the motorcycle as it entered the intersection. He lost sight of the motorcycle when it was about two car lengths away from the intersection because of an obstruction in his field of vision which was caused by parked cars in front of the Cap'n Syd's place of business. He estimated appellant's speed at 32 or 33 miles per hour. He did not go to the scene of the accident.

Neither Thompson nor Goodman were eyewitnesses to the collision. Both discontinued watching the motorcycle before it reached the intersection of Alameda and Robert. They estimated appellant's speed to be from 40 to 45 miles per hour. Both went to the scene of the accident. Both testified as to the positions of the two vehicles on the street following the impact.

■ It is the province of the trier of facts to resolve conflicts and inconsisten-

cies in the testimony of a witness or between witnesses. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957). An appellate court does not have the authority to set aside a fact finding because of conflicting evidence. Ordinarily, proper lookout and the related issue of proximate cause are proper questions for the trier of facts, the jury in this case. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946).

Fact issues were presented to the jury for determination. There is ample evidence from which the jury could have concluded that appellant did not keep a proper lookout for the Jackson automobile which was plainly visible and which would have been seen by a person of ordinary prudence similarly situated long before appellant did actually see it. At whatever speed appellant was travelling, 30, 40 or 45 miles per hour, there was ample time and distance for him to have taken evasive action which would have prevented the collision. After considering and weighing all of the evidence, as we must, we hold that the evidence in this case is factually sufficient to support the submission of the issues of appellant's failure to keep a proper lookout and proximate cause. The jury's answers to those issues are not against the great weight and preponderance of the evidence. Appellant's "factual insufficient evidence" and "against the great weight and preponderance of the evidence" points are overruled.

■ Appellant, in point 9, contends that the trial court erred in allowing the witness Bentley to speculate on projected time sequences by extrapolating the Jackson vehicle in a rearward direction without any evidence to support his hypothetical opinion testimony. He argues that there is no evidence in the record which will support Bentley's assumption that the Jackson automobile was moving at a constant speed of 7.4 miles per hour from the point when it started the turning movement to the point of impact. We do not agree.

As already noted, Miss Jackson testified that she was travelling between 8 and 10 miles per hour as she began her left turn and that she did not speed up prior to the actual collision. Bentley calculated her speed to be 7.4 miles per hour from the beginning of the left turn up to point of impact. That calculation was made from all of the data which was accumulated and used by Bentley with regard to speed, time and distance as the same related to vehicles involved in the collision. Bentley testified in great detail as to those calculations. Of particular importance is the following excerpt from his testimony:

". . . Once you have determined the final position, how the vehicles collide, then you can determine speeds involved in the collision itself. Once speeds are evaluated, then of course you can relate them in time to each other prior to when the collision occurred."

He also explained to the jury that he used a point calculation in arriving at the speed of the automobile. His explanation was couched in these words:

"Because each (the motorcycle and the automobile) had done a quantity of work and once this work quantity is determined for each vehicle, then, of course, all you do is evaluate speed that would be required to have this work capability. The motorcycle, in order to strike, collide with the front of the vehicle and move to its final position, as well as the car to equally collide with the motorcycle and between the two arrive at final positions. The car would have to be travelling at 7.4 miles an hour and the motorcycle at 40.25 miles per hour. This would result in both these vehicles moving to their final positions based on the collision angle. . . ."

■ Analysis and reconstruction of an accident by a qualified expert based on physical facts, photographs, diagrams, and other evidence adduced may be introduced into evidence. Polasek v. Quinius, 438 S. W.2d 828 (Tex.Civ.App.—Austin 1969,

writ ref'd n. r. e.) ; Bolstad v. Egelson, 326 S.W.2d 506 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.). Appellant relies heavily upon Polasek v. Quinius, supra, in support of his position. That case can be distinguished from the instant case. There, the facts assumed were not in evidence. Here, the speed of 7.44 miles per hour was determined from calculations which were made from facts that were in evidence. Appellant's point 9 is overruled.

The judgment of the trial court is affirmed.