Louis Charles HILL, Appellant,

v.

Nathan CLAYTON, et al., Appellees.

No. 13–91–234–CV.

Court of Appeals of Texas,
Corpus Christi.

March 23, 1992.

Rehearing Overruled April 16, 1992.

Alton C. Todd, Roy L. Warren, Todd & Hagood, Alvin, for appellant.

William Book, Mary Jensen, Karen Clark, Southwestern Bell Telephone Co., Alex Guevara, Jr., Houston, for appellees.

Before NYE, C.J., and SEERDEN and BISSETT[1], JJ.

## OPINION

NYE, Chief Justice.

A jury awarded appellant damages for personal injuries resulting from an assault and from appellee Clayton's negligence. The jury imputed no negligence to appellee S.W. Bell Telephone Company (Bell). The trial court denied appellant's motion for

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

new trial, from which he now appeals by eleven points of error, claiming that the jury's damage award and its finding that Bell was not liable were against the great weight and preponderance of the evidence and were the result of jury bias, passion, prejudice, or other improper motive. He further complains of improperly submitted jury questions and erroneous instructions. We affirm the trial court's judgment in part and reverse in part.

Clayton lives on the same street as Hill's mother. Hill, a frequent visitor at his mother's, was watching the house while she was away. Road repairs near Clayton's home interrupted his telephone service. In order to restore it, Bell laid a temporary line from Clayton's house, above-ground, to a terminal box located on the telephone company's easement. The easement was across the street on Hill's mother's property. The line had no tags or markings on it to indicate the telephone company laid it.

When appellant next checked on his mother's house, he noticed the line running from his mother's property, connected to Clayton's house. Thinking that Clayton had wiretapped his mother's telephone, appellant cut the line. Soon thereafter, appellant left for the beach and returned to his mother's at around 10:00 p.m. Discovering that his phone service was out again, and knowing that Bell would probably not send someone to fix it on a Sunday, Clayton spliced the temporary line to restore his service.

Upon returning, appellant found the line reconnected and attempted to pull it apart at the splice. The line came loose from its connection on the Clayton house, and appellant proceeded to roll it up from his position in the street. Clayton emerged from the house with a shotgun. What took place during the ensuing confrontation was hotly disputed at trial. According to Clayton, he found appellant on his property, drunk, and threatening violence. Clayton

ordered appellant to release the line. Instead, appellant threw the line at Clayton. Clayton fired two warning shots, which he thought missed appellant. Appellant testified that he was not on Clayton's property. He claimed that, at Clayton's order, he immediately released the line and turned back to his vehicle. Clayton then fired several shots and hit him in the foot.

The jury found that appellant was not on Clayton's property when Clayton shot him, that Clayton assaulted appellant, that Clayton was fifty percent (50%) negligent, appellant was fifty percent (50%) negligent, and Bell was not negligent. The jury awarded $2,500 in damages.

 By points one through four, appellant claims he is entitled to a new trial and attacks the jury's damage award as being against the great weight and preponderance of the evidence and the result of bias, prejudice, passion or improper motive. A point urging that the verdict is against the great weight and preponderance of the evidence requires us to examine the entire record, considering all of the evidence, whether favorable to the verdict or unfavorable. The record must contain some evidence to support the jury's verdict. We reverse only if the verdict is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hipp v. J.D. Lowrie Well Service, Inc.*, 800 S.W.2d 668, 670 (Tex.App.—Corpus Christi 1990, writ denied); *O'Kelly v. Jackson*, 516 S.W.2d 748, 750 (Tex.App.—Corpus Christi 1974, no writ).

 The jury awarded $2500 in total damages to compensate appellant for physical pain and mental anguish, medical care, loss of earning capacity, physical impairment, and disfigurement. The charge did not request, and the jury did not specify, how much of the $2500 went to each element of damages.[2] The jury awarded no

---

**2.** The jury question followed the pattern jury charge for personal injuries and read as follows:
 What sum of money, if paid now in cash, would fairly and reasonably compensate Louis

Charles Hill for the damages, if any, that resulted from the occurrence in question? Consider the elements of damages listed below and none other. Consider each element separately. Do

money for future damages. Appellee Clayton argues that such a global submission of the damages issue requires the appellate court to assume that the jury awarded *something* for each element of damages, as Texas law requires. *See Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex.App.—Corpus Christi 1986, no writ); *Edmonson v. Keller,* 401 S.W.2d 718, 720 (Tec.Civ.App.—Austin 1966, no writ). In this case, the amount of damages given by the jury was so small that it is clearly wrong and manifestly unjust. Appellant claimed medical expenses of $8,939.45. He established by uncontroverted expert testimony that the medical bills submitted were reasonable and necessary for treatment of the gunshot wound. The award of $2500 for all the damages is against the great weight and preponderance of the evidence. *See Gray v. Floyd,* 783 S.W.2d 214, 217 (Tex.App.—Houston [1st Dist.] 1990, no writ). We are unable to find the jury's damage figure from any combination of figures presented by appellant's evidence.

The evidence showed that appellant was born with a congenital dislocation of the hip, for which he had had multiple surgeries. Before the accident his right leg was short, his foot deformed, and his ankle stiff. He walked with a limp, and he wore a prosthesis, which was damaged by buckshot pellets from the shooting.

Clayton stated that he fired warning shots at appellant, but he did not think that he had actually hit appellant. Appellant claimed that Clayton shot him in his right foot with a shotgun. The evidence showed that appellant's prosthesis and foot were hit with 00 buckshot pellets. C.E. Anderson, a firearms expert, reconstructed the parties' positions during the shooting, and he testified for appellant. As part of his reconstruction investigation, Anderson examined appellant's prosthesis and determined that appellant was hit by a direct shot, from approximately twenty feet, and that seven of the nine pellets in the cartridge struck the prosthesis. Evelyn Brunson of the Manvel Police Department testified that when she arrived at the scene of the shooting, she found appellant lying on his kitchen floor in a pool of blood.

The evidence was undisputed that appellant received emergency room treatment for a gunshot wound to the foot, which physicians described as follows: "there were three entrance wounds and two exit wounds, shell and bone fragments in the foot, and broken bones in the foot." Appellant later underwent two operations and a skin graft. Dr. Frank Ivey testified by deposition that the expenses from UTMB–Galveston and Alvin Community Hospital were reasonable and necessary medical expenses due to appellant's gunshot wound. After nine days, hospital physicians released appellant in a cast, with crutches, and scheduled him for follow-up. He did not return after the first couple of visits.

Evidence of appellant's pain, suffering, and impairment came from appellant's own testimony that he "still has problems" with bleeding from the skin graft, that the operation was painful, and the injury had, "in some ways affected [his] ability to enjoy life." Dr. Ivey testified that he did not know if the gunshot wound added to appellant's disability. Counsel for defendants established that appellant had been drinking the day of the incident. Appellant told the emergency room anesthesiologist he had drunk at least two six packs of beer that day. Appellant never elaborated on how much pain he suffered or on how his enjoyment and abilities had been affected.

Testimony also showed that appellant lost three months of work due to the accident, but that his work attendance and employment opportunities had improved after the incident.

not include damages for one element in any other element. Do not include interest on any amount of damages you find.
a. Physical pain and mental anguish.
b. Medical care in the past.
c. Loss of earning capacity.
d. Physical impairment.
e. Disfigurement.

Answer in dollars and cents for damages, if any, that:

| | |
|---|---|
| were sustained in the past | $2500.00 |
| in reasonable probability will be sustained in the future | $ 0 |

■ Ordinarily, the amount of damages to be awarded is left to the sound discretion of the jury, to determine from a preponderance of the evidence the amount of money that would fairly and reasonably compensate the injured party. *Gray*, 783 S.W.2d at 216; *Clark v. Brewer*, 471 S.W.2d 639, 642 (Tex.App.—Corpus Christi 1971, no writ). The jury is generally the sole judge of the witnesses' credibility and the weight of their testimony. It may believe all, part, or none of the testimony, and is not required to believe even witnesses who are unimpeached and uncontradicted. *Gray*, 783 S.W.2d at 216. Here, the jury found that Clayton assaulted appellant, and he was defending neither himself nor his property. Appellant showed, without contradiction, reasonable and necessary medical expenses resulting from the assault, and this amount was three times greater than the damages the jury awarded. In considering the evidence, the jury cannot ignore the undisputed facts and arbitrarily fix an amount that is neither authorized nor supported by the evidence. *Clark*, 471 S.W.2d at 642. This being the case, the trial court erred in denying appellant's motion for new trial. We sustain points one, three and four. We overrule point two because appellant did not properly preserve any complaint of jury misconduct.[3]

By his sixth and seventh points of error, appellant complains that the jury's finding that Bell was not negligent is against the great weight and preponderance of the evidence and resulted from jury bias or other improper motive. In opposition, appellee Bell brings two counter-points, claiming that the trial court erred in denying its motions for summary judgment and for directed verdict because Bell owed no duty to appellant to tag the line, and its actions did not proximately cause appellant's injuries.

■ We overrule appellant's sixth and seventh points of error because he failed to preserve this complaint for appeal. To preserve a complaint that a finding is factually insufficient, appellant must raise the point in a motion for new trial. TEX.R.CIV.P.

324(b); TEX.R.APP.P. 52(d). Although he filed a motion for new trial on the lack of factual support for the damage award, appellant did not complain about the jury's failure to find Bell negligent. Therefore, appellant has waived this claim. TEX. R.APP.P. 52(d).

■ By point seven, appellant claims that the jury's finding that Bell was not liable was the result of improper motive. However, appellant's motion for new trial contains no sufficient allegation of jury misconduct. He filed no supporting affidavits, and he failed to show any specific facts which would indicate jury misconduct. Broad, general allegations assigning presumed misconduct as a reason for the jury's verdict are not sufficient to preserve alleged error. *See* TEX.R.CIV.P. 327; *See generally Cortez v. Medical Protective Co.*, 560 S.W.2d 132, 137 (Tex.App.—Corpus Christi 1977, writ ref'd n.r.e.). Since appellant has failed to properly preserve any complaint on the jury's finding that Bell was not liable, we affirm that finding.

Appellant's remaining points urge erroneous submission of jury questions and erroneous instructions resulting in the harm of an inadequate damage award to appellant. Since we sustain appellant's points one, three, and four, we need not address these issues. *See* TEX.R.CIV.P. 90(a). The judgment of the trial court is hereby REVERSED and this cause is REMANDED for a new trial as between appellant and defendant Clayton only. We AFFIRM the trial court's judgment of no liability to S.W. Bell.

---

**3.** *See* discussion of points six and seven, *infra.*