**Phillip A. HILLAND, Appellant,**

v.

**Herman Harvey ARNOLD, Appellee.**

No. 6–93–013–CV.

Court of Appeals of Texas,
Texarkana.

May 25, 1993.

E. Ben Franks, Franks & Grimes, Texarkana, for appellant.

Shannon Tuckett, Lavender, Rochelle, Barnette, Dickerson, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Phillip A. Hilland appeals from a judgment in his favor in his personal injury action against Herman Harvey Arnold. In his sole point of error, Hilland contends that the trial court erred in failing to grant his motion for a new trial because the award of damages in the judgment goes against the great weight and preponderance of the evidence. Hilland's complaint is that this jury award was too low.

## BACKGROUND

On July 7, 1990, a vehicle driven by Arnold struck the back of a vehicle driven by Hilland on Richmond Road in Texarkana. Arnold had been distracted by a woman walking beside the road. A police officer, who arrived on the scene to investigate the collision, asked all involved whether they needed medical attention. Hilland declined such attention; however, he did tell the officer that he felt a little numb but that this condition probably resulted from his propensity to suffer panic attacks. Hilland then drove his car from the scene to a video rental store where he returned rented movies.

Later that day, Hilland went to the Collom & Carney Clinic where Dr. W. Lynn Reep ordered x-rays, which revealed no major injuries, and prescribed a muscle relaxant. The bill for this visit totaled $120. Hilland testified that the next day he had an intense pain in his neck, but when he called Dr. Reep, the doctor told him that the pain should subside in three or four days.

On July 20, two weeks after the accident, Hilland went to see Dr. Richard Hilborn, whom Hilland had seen in the past for

lower back pain. Dr. Hilborn diagnosed Hilland's neck pain as resulting from a cervical strain, a strain of muscles in the neck. Dr. Hilborn, however, could find no objective basis for Hilland's pain. In August, Hilland returned to see Dr. Hilborn, at which time the doctor prescribed physical therapy.

In early September, after a three-week vacation in Central America, Hilland went to see Dr. Hilborn again. This time the doctor took another set of x-rays, which revealed no abnormalities except for some arthritic changes. A magnetic resonance imaging examination (MRI), also ordered by Dr. Hilborn, showed a bulging disk in Hilland's spine. Hilland continued occasionally to see Dr. Hilborn, whose bills totalled $539. The x-rays ordered by Dr. Hilborn cost $245, and the MRI cost $1,089.60. When Hilland's pain continued unabated despite the physical therapy, Dr. Hilborn referred Hilland to the Glenwood Medical Clinic in Little Rock. At Glenwood and at the Baptist Rehabilitation Institute, Hilland incurred bills of almost $9,000.

After the accident, Hilland also received psychiatric counseling, which was a continuation of counseling that had begun about eight months before the collision. The session notes of one of the two psychiatrists reveal that Hilland had a problem with numbness before the accident and that the numbness was possibly related to a panic disorder. The same notes indicate that Hilland suffered from hypochondriasis, a mental disorder characterized by the interpretation of normal sensations or minor abnormalities as indications of highly disturbing problems needing medical attention. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 803 (27th ed. 1988). Hilland incurred a debt of $560 for the post-collision visits to the psychiatrists.

Hilland testified that he incurred a total of $13,060.81 in medical expenses related to the accident. He offered evidence of the reasonableness and necessity of these expenses by submitting medical expense affidavits of people with knowledge of the accuracy of the amounts. Hilland further testified that he missed seven weeks at work on the advice of his psychiatrist and that this caused him to lose wages totalling $4,375. Altogether, Hilland alleges that he incurred $17,435 in medical bills and lost wages due to Arnold's negligence.

The jury answered the question of liability in Hilland's favor, but it awarded him only $659, the amount of expense incurred with Doctors Reep and Hilborn, the first two physicians who Hilland visited after the accident. The trial court entered judgment based on the jury verdict.

## DISCUSSION

 Hilland contends that the trial court erred in failing to grant his motion for a new trial because the award of damages in the judgment goes against the great weight and preponderance of the evidence. The trial court should be reversed only if the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Hilland argues that the medical bills, coupled with the uncontroverted medical expense affidavits, establish the reasonableness and necessity of the expenses. TEX.CIV.PRAC. & REM.CODE ANN. § 18.001 (Vernon 1986 & Supp.1993) states:

Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

TEX.CIV.PRAC. & REM.CODE ANN. § 18.001(b); *see also Six Flags Over Texas, Inc. v. Parker*, 759 S.W.2d 758 (Tex.App.–Fort Worth 1988, no writ).

Section 18.001(e) requires that a party intending to controvert a claim reflected by an affidavit concerning cost and necessity of services *must* file a counteraffidavit with the clerk of the court and serve a copy on the other party not later than ten days after the date the party has received a copy of the initial affidavit. This section re-

quires the filing of a counteraffidavit as a prerequisite to contesting matters set forth in the affidavit. In the case of *Allright, Inc. v. Strawder,* 679 S.W.2d 81 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.), the court held that an uncontroverted affidavit submitted pursuant to this statute (at that time Article 3737(h), now Section 18.-001) established the amount of damages as a matter of law.

Hilland points to *Hill v. Clayton,* 827 S.W.2d 570 (Tex.App.–Corpus Christi 1992, no writ), as a white horse case.[1] In *Hill,* the court held that the jury could not ignore the undisputed facts and arbitrarily fix an amount that was neither authorized nor supported by the evidence. In that case, by affidavits, the appellant had shown without contradiction the reasonable and necessary medical expenses *resulting from the assault.* We do not find the *Hill* case to be directly in point with the present case because the causal link between the collision and medical expenses in the present case is disputed.

■ Each of the five affidavits establishing the reasonable and necessary medical expenses filed by Hilland contains the following language, "The services reflected in the attached statement were necessary for the proper care and treatment of PHILLIP A. HILLAND." Although this language states that Hilland had a medical condition that necessitated the treatment, the language does not link the treatment to the accident involving Arnold. Texas law requires an injured party who receives medical treatment to recover only those reasonable medical expenses which were necessarily incurred as a result of the injuries suffered in the collision or occurrence involved in the litigation. *See Kulms v. Jen-*

*kins,* 557 S.W.2d 149 (Tex.Civ.App.–Amarillo 1977, writ ref'd n.r.e.); *Texas & N.O.R. Co. v. Barham,* 204 S.W.2d 205 (Tex.Civ. App.–Waco 1947, no writ).

Arnold does not dispute that his negligence caused the collision or that Hilland incurred the alleged and proven expenses. Arnold does dispute, however, the causal link between the accident and the expenses. There was evidence that Hilland could be suffering pain stemming from an arthritic deterioration in his spinal column. This deterioration was not necessarily a result of the accident. In his deposition, Dr. Hilborn said that it was unusual for a man as young as Hilland to have arthritic changes in the absence of trauma. But, because Dr. Hilborn had not seen any x-rays taken of Hilland before the accident, or at least before the arthritis could set in if it resulted from the accident, he refused to testify affirmatively as to the cause of the deterioration. The doctor also refused to make such a determination when shown the report on the x-rays taken at the Collom & Carney Clinic. This report did not mention the arthritic condition, but Dr. Hilborn refused to draw any conclusions from the missing diagnosis.

The MRI performed on Hilland revealed that he had a bulging disc in his spinal column. As to this condition, Dr. Hilborn stated that:

> I certainly couldn't rule out the possibility of the rear end collision having some effect on the disc at that level. At the same time I've seen similar findings on MRI in people that have no history of trauma. So I guess, I mean I guess that it could have been from the motor vehicle accident or it could predate the accident.

---

**1.** The term *white horse case* has appeared in twenty-six published appellate cases in Texas. According to Bryan A. Garner, A Dictionary of Modern Legal Usage 577 (1987), this term (along with the terms *horse case, gray mule case, goose case, spotted pony case,* and *pony case*) means a reported case with virtually identical facts, which therefore should determine the disposition of the instant case. At least one source reports that this term was coined in Dallas, Texas. According to what is probably an apocryphal story, around the turn of the century a Texas law firm had a case in which a white horse owned by the client's taxi service reared in the street, causing an elderly woman to fall and injure herself. The partner handling the case asked a young associate to find a case on point. The associate came back several hours later with a case involving an elderly lady who had fallen in the street after a taxi company's black horse had reared in front of her. When the associate took this case to the partner, the partner said, "Nice try, son. Now, go find me a white horse case."

**243**

The only other evidence of causation comes from Hilland's own testimony that his neck became numb immediately after the collision and that the morning after the collision he felt intense pain in his neck, which continued to bother him for some time. While this evidence shows that Hilland endured initial pain from strained muscles in his neck, it does not establish that the later pain resulted from the collision. The jury awarded Hilland the expenses he incurred in getting the initial pain diagnosed and treated, but the jury had discretion to disbelieve Hilland's testimony regarding the cause of the continuing pain, and his testimony was the only direct evidence of causation in this case.[2] *See McGuffin v. Terrell,* 732 S.W.2d 425, 428 (Tex.App.–Fort Worth 1987, no writ) (jury may disbelieve interested witness even if uncontradicted). The jury had the discretion to consider Dr. Hilborn's refusal to testify affirmatively that the collision caused Hilland's pain as weighing against such a causal link. *See Reed v. Acme Terminal Warehouse & Storage, Inc.,* 729 S.W.2d 118, 119 (Tex.App.–Beaumont 1987, writ ref'd n.r.e.) (doctor testified that accident may or may not have caused the injury); *see also McGuffin,* 732 S.W.2d at 428 (jury could consider fact that medical reports shortly after the collision indicated no objective symptoms). Likewise, the jury could have believed that Hilland's hypochondriasis was the cause of his later complaints. We find that the trial court's judgment was not so against the great weight and preponderance of the evidence to be manifestly unjust. This point of error is overruled.

We affirm the judgment of the trial court.

---

**2.** In asking the jury about damages for medical care, the inquiry stated:

What sum of money, if paid now in cash, would fairly and reasonably compensate Phillip Hilland for his injuries, if any, *that resulted from the occurrence in question?* (Emphasis added.)