**Ioan NICOLAU and Wife, Liana Nicolau, Appellants,**

v.

**STATE FARM LLOYDS, Appellee.**

**No. 13-92-467-CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 16, 1993.

Rehearing Overruled Jan. 28, 1994.

---

Russell H. McMains, McMains & Constant, Savannah Robinson, Cox & Robinson, Stacy Keaton, Corpus Christi, for appellants.

Paul Dodson, Mark DeKoch, White, Huseman, Pletcher & Powers, Corpus Christi, for appellee.

Before GILBERTO HINOJOSA, NYE [1], and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This suit arises from a claim made by Ioan and Liana Nicolau, appellants, on their homeowner's policy with State Farm Lloyds, appellees. The Nicolaus challenge the trial court's rendering of judgment non obstante veredicto and reduction of attorney's fees.

State Farm Lloyds cross-appeals by ten insufficiency points of error and an allegation that the trial court erred in its submission of the charge. We affirm in part and reverse and render in part.

The Nicolaus have resided in the home which is the subject of this appeal since 1979. Their homeowner's policy with State Farm Lloyds insures the home for $113,100. The policy excludes losses caused by inherent vice (construction or foundation defect) and by settling (foundation movement), with the exception of losses caused by accidental discharge or leakage from a plumbing system. The policy also has an additional living expenses provision which reimburses for living expenses caused by the home becoming partially or wholly unlivable.

In 1984, Michael Krismer, a foundation repair contractor, determined that the Nicolau home was either settling or heaving and recommended that the Nicolaus hire a structural engineer. Elevations of the foundation indicated that the living room wing was 4.3 inches below the center of the house, and the front bedroom wing was 2 inches below the rear of the house. The Nicolau home had suffered minor cracks in the sheetrock and in the brick veneer.

The Nicolaus hired Maverick Engineering, which concluded that the foundation on the two front wings of the Nicolau home was settling due to clay shrinkage. Although the symptoms of settling and heaving are the same, their causes are not. Krismer testified that settling was caused by shrinkage of the clay soil beneath the foundation due to low moisture content, and heaving was caused by expansion of the clay soil due to high moisture content. In concluding that the soil beneath the Nicolau home was shrinking, Maverick speculated that the cause of the shrinkage was a combination of trees in the Nicolau's front yard and drought in 1982 and 1984. A plumbing leak was not suspected at that time, and so hydrostatic tests and soil samples were not taken.

To remedy the settling, Krismer installed cement piers under the front of the home. The living room wing was levelled with the

---

1. Former Chief Justice Paul W. Nye, retired April 30, 1993.

center of the home, and the bedroom wing was stabilized at two inches below the rear of the house. The sole utility of the piers was to prevent further settling of the front of the house. Krismer also performed some minor cosmetic repairs.

In 1988, the Nicolaus again observed cracking in the sheetrock. Elevations taken by Krismer and Maverick Engineering showed that the front of the house had moved less than one-half inch, indicating that the piers installed by Krismer were functioning normally. In June 1989, the Nicolaus called another foundation repair person who confirmed that the elevations of the foundation were what Krismer and Maverick Engineering had indicated.

In October 1989, Krismer went to the Nicolau home again and was "alarmed" by the apparent foundation movement. From the front to the rear of the Nicolau home, the foundation differential had increased to 3½ to 5 inches. Since the front of the house was stable, Krismer concluded that the foundation of the Nicolau home was heaving in the rear and again called Maverick Engineering.

Because heaving can be caused by expansion of clay soil due to high moisture content, Krismer recommended in November 1989 that the Nicolaus have their plumbing checked. To determine whether a leak existed, the plumber attempted to perform a hydrostatic test, which required that the pipes be completely filled with water. However, he was unable to perform the hydrostatic test because the leak in the line was so great that the pipes would not completely fill with water. The Nicolaus reported the leak to State Farm Lloyds.

In March 1990, American Leak Detection (ALD), at the request of State Farm Lloyds, determined that a plumbing leak existed beneath the master bathroom. Krismer testified that Monty Murray, the State Farm Lloyds adjuster at the scene with ALD, was not interested in hearing the history of the house regarding foundation problems. ALD did not isolate the leak or determine its severity at that time.

The Nicolaus sent State Farm Lloyds a report from Maverick Engineering which stated that its preliminary conclusion, based on the available information at that time, was that the leak under the house might have caused the foundation to heave. Ralph Cooper, a State Farm Lloyds adjuster, wrote the Nicolaus, stating that he was going to get a second opinion from Haag Engineering. He testified that, at the time he wrote the letter, he "knew [Haag engineers] were of the general opinion that a localized leak beneath the house would not cause foundation movement as a general rule."

Without isolating the leak, determining its severity, or taking soil samples from beneath the Nicolau home, Haag concluded that any isolated plumbing leak beneath the Nicolau home did not cause the foundation movement. Cooper testified that he relied on Haag's report, which precluded the application of the plumbing exception to exclusions caused by inherent vice or settling. Accordingly, in May 1990, Cooper sent a reservation of rights letter to the Nicolaus, detailing Haag's report, and advising them of the possibility that their claim would not be covered. Cooper was of the opinion that the foundation problems were due to settling or inherent vice, both of which were excluded under the Nicolaus' homeowner policy.

American Leak Detection did not return to the Nicolau home until August 1990 to isolate the plumbing leak it had discovered in March. As a consequence of their delay, the Nicolaus lived with a work-hole in their master bedroom floor for five months. During this time, State Farm Lloyds never informed the Nicolaus that their homeowner's policy included an additional living expenses provision, applicable if their home became partially unlivable.

In August 1990, on the same day the broken pipe was isolated, Chien Fu, a civil engineer with Trinity Engineering, performed four soil borings to determine the moisture content of the clay beneath the Nicolau home. He testified that the moisture content ranged as high as 45.9 percent, which was "extremely wet." Fu testified that so much moisture existed under the foundation that, when he took a boring in the kitchen, "free water" came out of the hole. He opined that this was highly unusual.

Fu also testified with respect to the dynamics of water movement under a foundation. He explained that clay was much more impermeable to water than sand, and that water tended to follow the path of least resistance. Accordingly, under the Nicolau home, Fu predicted that the water would tend to follow the plumbing trench, which was filled with sand. Then, once the plumbing trench was saturated, the water would expand out through the layer of cushion sand between the clay substrate and the foundation. Fu testified that the sand cushion immediately beneath the broken pipe was only one inch, while the sand cushion beneath the other parts of the home was approximately 4 to 5 inches. Therefore, Fu testified, even though the slab surface was uphill from the master bathroom leak to the kitchen (where the worst heaving was occurring), the water coming from the leak under the Nicolau home would tend to drain away from the master bedroom because the bottom of the sand cushion progressed downhill to other parts of the house.

Fred Hayden, a civil engineer with Maverick Engineering, concluded that, because the soils were extremely wet beneath the Nicolau home, the water must have come from an outside source, and the only source was the plumbing leak. Hayden observed that the whole house had brick-veneer cracks, separations between the window panes and frames, sheetrock cracks, tile cracks, and jamming doors and cabinets. Hayden stated that some of the damage may have been caused by the home's "light" foundation, but declined to apportion fault.

Cooper, the State Farm Lloyds adjuster, rejected the Nicolau's perfected proof of loss request of $102,200 on the grounds that they had not provided sufficient estimates. Eventually, Cooper informed the Nicolaus that any repairing or levelling would not be covered by their homeowner's policy because State Farm Lloyds had concluded that the settling or heaving was not associated with the plumbing leak. State Farm Lloyds did pay the Nicolaus $1,820 for plumbing repairwork.

The Nicolaus sued on the theories of breach of contract, breach of the duty of good faith and fair dealing, and unconscionability under the Deceptive Trade Practices Act. Trial was to a jury and the verdict reflects that the jury found 1) that State Farm Lloyds breached its insurance contract with the Nicolaus and that the breach was a proximate cause of the Nicolau's damages; 2) that State Farm Lloyds engaged in unfair or deceptive acts or practices which were a producing cause of the Nicolau's damages; 3) that State Farm Lloyds failed to deal fairly and in good faith with the Nicolaus which was a proximate cause of the Nicolau's damages; 4) that State Farm Lloyds' failure to deal fairly and in good faith was done with malice; 5) that State Farm Lloyds engaged in an unconscionable action or course of action; 6) such unconscionable conduct was a producing cause of the Nicolau's damage; and 7) that State Farm Lloyds knowingly engaged in unfair or deceptive acts or unconscionable conduct. The jury also found that $102,200 was the amount of loss caused by the accidental discharge, leakage or overflow of water from within a plumbing system. The jury awarded $102,200 as policy benefits owed for necessary repairs, $50,000 for mental anguish in the past, and $300,000 as exemplary damages for maliciously failing to deal fairly and in good faith. The jury also awarded attorneys' fees at the rate of 40%, or, alternatively, $150,000.

The trial court rendered judgment non obstante veredicto. It disregarded all of the jury's liability findings except breach of contract, and disregarded the jury's damages findings except policy benefits owed ($100,-380), 40% attorney's fees ($40,152), prejudgment interest ($6,930), and postjudgment interest at 10% per annum. Appellants had elected to receive 40% of the award as attorneys' fees.

We first address the breach of contract claim. State Farm Lloyds' first cross-point of error is that the evidence is insufficient to support the jury's finding that State Farm Lloyds breached its insurance contract with the Nicolaus.[2] When reviewing a challenge

---

2. Tex.R.Civ.P. 324(c) permits the appellee from a judgment non obstante veredicto to bring cross-

to the sufficiency of the evidence, an appellate court must consider, weigh, and examine all of the evidence that supports and that is contrary to the jury's determination. *Plas-Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). The court should set aside the jury's verdict only if the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). The jury is generally the sole judge of the witnesses' credibility and the weight of their testimony. *Hill v. Clayton,* 827 S.W.2d 570, 574 (Tex.App.—Corpus Christi 1992, no writ). The jury may believe all, part, or none of the testimony, and is not required to believe even witnesses who are unimpeached and uncontradicted. *Id.*

■ The jury answered affirmatively when it was asked in question # 1 of the jury charge, "Did State Farm breach the insurance contract with Ioan and Liana Nicolau which breach was a proximate cause of damage, if any, to Ioan and Liana Nicolau?" The undisputed evidence showed that the Nicolaus had a homeowner's policy with State Farm Lloyds that provided coverage in the event that damage caused by inherent vice or settling was the result of accidental plumbing leakage. Thus, the issue the jury had to decide was whether the plumbing leak under the Nicolau home proximately caused the foundation movement.

Krismer and Maverick Engineering testified that in 1989 the Nicolau home was no longer settling, but was heaving. Fu and Krismer explained that settling was caused by clay shrinkage, which resulted from low moisture content, and that heaving was caused by clay expansion, which resulted from high moisture content. Krismer testified that he installed several cement piers along the front of the Nicolau home which prevented further settling. Subsequent elevations indicated that the back of the house was increasing in elevation relative to the front of the house. A plumbing leak was found under the master bathroom which was so substantial that one of Fu's soil borings

had a moisture content of 46% at a depth of five feet. Fu stated that, when he was taking the soil borings, "free water" came out of one of the holes in the slab. Hayden testified that, since the soil under the Nicolau home was extremely wet, then the water must have come from an outside source, and the only outside source was the plumbing leak. The jury could have inferred from this evidence that the back of the Nicolau home was heaving due to the plumbing leak.

Haag engineers testified at trial that no relationship existed between the plumbing leak and the foundation movement. Haag's main support for its position was a well-known University of Texas at Arlington study which indicated that unpressurized point-source plumbing leaks rarely cause foundation damage. Haag engineers also attempted to replicate the plumbing leak under the Nicolau home to illustrate that the volume of escaping water would be too small to cause foundation damage. Nonetheless, the jury was free to disregard the conclusions reached by the Haag engineers. *Hill,* 827 S.W.2d at 574.

We do not find that the evidence supporting the jury's breach of contract finding is so weak as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176. Appellee's first cross-point of error is overruled.

■ State Farm Lloyds argues by two points of error that the trial court erred in submitting question # 1 of the jury charge without instructions explaining the applicable exclusions and exceptions to the homeowner's policy. Tex.R.Civ.P. 277 provides that the court shall submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." "To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety.... Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the

points of error, including attacks on the sufficiency of the evidence, which would have prevented an affirmance of the judgment had one been

rendered by the trial court in harmony with the verdict.

complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment." *Island Recreation Dev. v. Republic of Texas Sav.,* 710 S.W.2d 551, 555 (Tex.1986); *see also* Tex.R.App.P. 81(b)(1).

With minor exception, appellee's proposed instruction quoted verbatim the insurance provisions in dispute during trial. These provisions were not only introduced into evidence, but were also enlarged and displayed during portions of the trial. The exceptions and exclusions were extensively covered while State Farm Lloyds' adjuster was testifying. If the jury had any doubt with regard to the wording of the provisions, the policy had been introduced into evidence and so was available for inspection. Without concluding that failure to submit appellee's proposed instruction was error, we hold that any error would be harmless error. Viewed in the totality of the circumstances, the trial court's refusal to submit appellee's proposed instruction did not amount to such a denial of State Farm Lloyds' rights as was reasonably calculated to cause or probably did cause the rendition of an improper judgement. *Island Recreation Dev.,* 710 S.W.2d at 555. Appellee's two points of error are overruled.

We now turn to the jury's finding that State Farm Lloyds breached its duty of good faith and fair dealing and engaged in an unfair or deceptive act.[3] In their second and third points of error, the Nicolaus challenge the trial court's rendering of judgment non obstante veredicto on the jury's finding that State Farm Lloyds engaged in an unfair or deceptive act and breached its duty of good faith and fair dealing. If we sustain this point, we must address State Farm Lloyds' second and third cross-points of error, which challenge the sufficiency of the evidence to support the jury's bad faith and unfair or deceptive act findings.

Under Tex.R.Civ.P. 301, the trial court "may render judgment non obstante veredicto if a directed verdict would have been proper, ... and [may] disregard any jury finding on a question that has no support in

the evidence." An appellate court reviewing the granting of a judgment non obstante veredicto must determine whether any evidence exists upon which the jury could have made the disputed finding. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). The record is "reviewed in the light most favorable to the finding, considering only the evidence and inferences which support them and rejecting the evidence and inferences contrary to the findings." *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986). When more than a scintilla of competent evidence supports the jury's finding, the judgment non obstante veredicto should be reversed. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

▪ An insurer has a duty of good faith and fair dealing to its insured which arises out of the parties' unequal bargaining power, the need to prevent unscrupulous insurers from taking advantage of insureds' misfortunes, and the need to provide a penalty for arbitrary denial or delay of coverage which is greater than interest on the amount owed. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). The insurance company is held to "that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business." *Id.* (quoting *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 548 (Tex.Comm'n App.1929, holding approved)).

▪ To show that an insurance carrier has breached the duty of good faith and fair dealing, a claimant must show 1) the absence of a reasonable basis for denying or delaying payment of the benefits of a policy *and* 2) that the insurance carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda v. Insurance Co. of North Amer.,* 748 S.W.2d 210, 213 (Tex. 1988). The first element entails an objective determination of "whether a reasonable insurer under similar circumstances would

---

**3.** The charge defined "unfair or deceptive act or practice" to include "failing to promptly and equitably pay a claim after liability became rea- sonably clear" and "denying the claim without a reasonable basis to do so."

have delayed or denied the claimant's benefits." *Id.* The second element is satisfied by proving either that the carrier "actually knew there was no reasonable basis to deny the claim or delay payment," or by proving that the carrier, "based on its duty to investigate, should have known that there was no reasonable basis for denial or delay." *Id.*

When reviewing a bad faith claim, the relevant inquiry is what facts the insurance carrier had before it at the time it denied the claim. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex.1990). A carrier's reliance on its investigator must be reasonable. *St. Paul Ins. Co. v. Rakkar*, 838 S.W.2d 622, 626 (Tex.App.—Dallas 1992, no writ). Since a carrier must rely on expert opinion when coverage is determined by an analysis of technical matters, an expert's opinion should not be discounted without some reasonable basis to challenge that opinion. *Guajardo v. Liberty Mut. Ins. Co.*, 831 S.W.2d 358, 365 (Tex.App.—Corpus Christi 1992, writ denied) (on motion for rehearing). The weight of contrary expert opinion necessary to destroy the carrier's reasonable basis is a question of fact for the jury under *Aranda* and *Arnold*. *Id.* In addition to the conflicting expert opinion, the party alleging bad faith must also bring direct or circumstantial evidence showing that the carrier's expert's opinion was questionable and that the carrier knew or should have known that the opinion was questionable. *Id.*

State Farm Lloyd's adjuster, Ralph Cooper, testified that he knew at the time he wrote the letter to the Nicolaus explaining that he was going to get a second opinion from Haag Engineering that, as a general rule, Haag Engineering concluded that no relationship exists between plumbing leaks and foundation damage. Even though appellees adduced testimony that Haag sometimes finds such a link, Cooper's awareness of Haag's tendency in and of itself renders his blind reliance suspect. Accordingly, Cooper should have known that Haag's opinion was questionable. *Guajardo*, 831 S.W.2d at 365. The Nicolaus also brought forth circumstantial evidence of Haag's predisposition to find no link between plumbing leaks and foundation damage. *Id.* The evidence shows that, despite its awareness of a plumbing leak beneath the house, Haag concluded that there was no relationship between the plumbing leak and the foundation damage without even isolating the leak, determining its severity, or taking soil samples. Haag did not reconsider its opinion even after Fu's soil borings indicated that the moisture content of the clay under the Nicolau home averaged 38%, and varied as high as 46%. Since Cooper knew of Haag's predisposition, and since Haag prematurely concluded that the plumbing leak did not cause the foundation damage, the weight of contrary expert testimony necessary to destroy State Farm Lloyd's reasonable basis was a question of fact for the jury. *Id.*

Looking at the facts available to State Farm Lloyds at the time it denied coverage, *Viles*, 788 S.W.2d at 567, we conclude that more than enough evidence existed for the jury to have found that a reasonable insurer under similar circumstances would not have denied the Nicolau's claim. *Aranda*, 748 S.W.2d at 213. The jury could have inferred from Cooper's blind reliance on Haag's premature conclusions that State Farm Lloyds did not conduct itself with that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business. *Stowers*, 15 S.W.2d at 548. Furthermore, that Cooper knew of Haag's predisposition supports a finding that Cooper knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Aranda*, 748 S.W.2d at 213. The jury could have inferred that Cooper's reliance on his experts was not reasonable.

We hold that more than a scintilla of competent evidence supports the jury's finding that State Farm Lloyds engaged in unfair or deceptive acts and breached its duty to the Nicolaus to deal fairly and in good faith. The judgment non obstante veredicto rendered by the trial court on questions # 2 and # 3 should be reversed. *Southern States Transp., Inc.*, 774 S.W.2d at 640. Accordingly, appellant's second and third points of error are sustained.

■ We now address State Farm Lloyds' insufficiency cross-points of error which challenge the sufficiency of the evidence supporting the jury's finding that State Farm Lloyds engaged in unfair or deceptive acts and breached its duty of good faith and fair dealing. Keeping in mind that the jury is the sole judge of the credibility of the witnesses, *Hill,* 827 S.W.2d at 574, we review all of the evidence, not just the evidence supporting the jury's finding, to determine whether the evidence standing alone is so weak as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176. Our review is limited to the facts known by State Farm Lloyds at the time it denied the Nicolau's claim. *Viles,* 788 S.W.2d at 567.

The Nicolaus relied heavily on Cooper's admission that he knew of Haag's tendency not to find a relationship between plumbing leaks and foundation damage. Engineers from Haag countered with testimony that they did occasionally find such a relationship. Moreover, representatives from Haag Engineering testified that the foundation movement in the Nicolau home resulted from its "light" construction, in that it was made with a minimum number of cross-beams, and from climate-related heaving and settling. Their decision to discount the plumbing-leak explanation was solely based on the University of Texas at Arlington (UTA) study which indicated that nonpressurized point-source leaks rarely cause foundation damage. State Farm Lloyds made repeated references in its brief to the Nicolau home's "history" of foundation damage, referring to the problems in 1984 remedied by Krismer's cement piers, and implying that the problems in 1984 were indistinguishable from the problems in 1991.

The evidence strongly suggests, however, that in 1984 the house was settling and in 1991 the house was heaving. Furthermore, Cooper testified that, if a board from a home were damaged by termites, which was not covered under the Nicolau's policy, and by fire, which was covered under the Nicolau's policy, then State Farm Lloyds would pay to repair or replace the board. From this testimony, the jury could have inferred that, even if the Nicolau home had some inherent foundation problems unrelated to the plumbing leak, since some of the damage was related to the plumbing leak, then State Farm Lloyds unreasonably denied coverage. Furthermore, Haag never determined the severity of the plumbing leak to make a more knowledgeable determination of whether the UTA article applied to the specific facts of this case.

Having reviewed all of the evidence, we find substantial evidence supporting the contrary positions of the Nicolaus and State Farm Lloyds. Under such circumstances, we defer to the wisdom of the jury, which is the sole judge of the credibility of the witnesses. *Hill,* 827 S.W.2d at 574. We are unable to say that the evidence supporting the jury's finding that State Farm Lloyds engaged in unfair or deceptive acts and breached its duty of good faith and fair dealing is so weak as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176; *see State Farm Fire and Casualty Co. v. Price,* 845 S.W.2d 427, 438 (Tex.App.—Amarillo 1992, no writ). Appellee's second and third cross-points of error are overruled.

Having found sufficient evidence to support the bad faith finding, we now turn to appellee's three cross-points of error attacking the sufficiency of the evidence supporting the jury's damages findings. We combine in the same discussion the Nicolau's points of error attacking the trial court's disregard of the jury's damages finding.

Appellee's eighth cross-point of error and appellant's eighth point of error address the jury's award of $50,000 in mental anguish damages. Because appellee offers no argument and cites no authorities to support its contention that the evidence is insufficient to support a finding of mental anguish, we overrule appellee's eighth cross-point of error pursuant to Tex.R.App.P. 74(f).

■ Consequently, we only address the Nicolaus' eighth point of error, which argues that the trial court erred in disregarding the jury's award of $50,000 in mental anguish damages. If more than a scintilla of competent evidence supports the jury's finding, the judgment non obstante veredicto should be reversed. *Southern States Transp., Inc.,* 774 S.W.2d at 640. Once the existence of some mental anguish has been established, the

amount awarded is generally left to the discretion of the fact finder. *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80–81 (Tex. App.—Corpus Christi 1992, no writ).

With only two suitcases in hand, the Nicolaus fled from the Communist regime in Bucharest, Rumania in 1969. Mr. Nicolau testified that their house was their only investment and security. He stated that, since State Farm Lloyds denied his claim, he and his wife have been emotionally distraught enough to have suffered nausea and many sleepless nights. This is more than a scintilla of competent evidence to support the jury's finding. *Southern States Transp., Inc.*, 774 S.W.2d at 640. Accordingly, we sustain appellant's eighth point of error and reverse the trial court's judgement non obstante veredicto on the issue of mental anguish damages.

We now discuss appellee's fourth cross-point of error and appellant's fourth point of error which address the jury's finding of malice. State Farm Lloyds argues that the evidence is insufficient to support the jury's finding that State Farm Lloyds maliciously breached its duty of good faith and fair dealing. The Nicolaus argue that the trial court erred in disregarding the jury's malice finding.

Malice was defined in the charge as an "act that is carried out by State Farm with a flagrant disregard for the rights of Ioan and Liana Nicolau and with actual awareness on the part of State Farm that the act will, in reasonable probability, result in human death, great bodily harm, or property damage." A claimant may recover exemplary damages when the defendant has displayed conduct which is willful, malicious or shows conscious indifference. *National Fire Ins. v. Valero Energy*, 777 S.W.2d 501, 511 (Tex.App.—Corpus Christi 1989, writ denied). To support a finding of malice, the evidence need not show that hatred, dislike, spite, or resentment existed. *Transfer Prods., Inc. v. Texpar Energy, Inc.*, 788 S.W.2d 713, 715 (Tex.App.—Corpus Christi 1990, no writ).

When Cooper hired Haag Engineering, he was fully aware of Haag's predisposi-

tion not to link foundation damage to plumbing leaks. Krismer testified that Monty Murray was not interested in hearing about the Nicolau home's foundation problems when he was at the scene to oversee American Leak Detection. Cooper testified that he never told the Nicolaus about the additional living expenses provision which would have reimbursed them for living expenses caused by their home becoming partially unlivable. Based on this evidence, we cannot say that the evidence supporting the jury's malice finding is so weak as to be clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176. Appellee's fourth cross-point of error is overruled. By implication, appellant's fourth point of error is sustained, and the trial court's judgment non obstante veredicto with respect to the jury's malice finding is reversed.

The next damages issue to address is the jury's award of exemplary damages. In its ninth and tenth cross-points of error, State Farm Lloyds challenges the sufficiency of the evidence supporting the jury's award of $300,000 in exemplary damages, and asserts in the alternative that the amount of damages is excessive. In their ninth point of error, the Nicolaus challenge the trial court's disregard of the jury's exemplary damages award.

Having affirmed the jury's finding that State Farm Lloyds maliciously breached its duty of good faith and fair dealing, the evidence suffices to support an exemplary damages award. *Valero Energy Co.*, 777 S.W.2d at 511. Accordingly, we turn to the issue of whether $300,000 is an excessive exemplary damages award.

Since TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001 *et seq.* and 41.001 *et seq.* (Vernon Supp.1993), are inapplicable to a breach of the duty of good faith and fair dealing claim, no set rule or ratio determines the excessiveness of an exemplary damages award, except that the award must be "reasonably proportional" to actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981). Factors to consider in determining whether an award of exemplary damages is reasonable include 1) the nature of

the wrong, 2) the character of the conduct involved, 3) the degree of culpability of the wrongdoer, 4) the situation and sensibilities of the parties concerned, and 5) the extent to which such conduct offends a public sense of justice and propriety. *Kraus,* 616 S.W.2d at 910.

▇ Considering these factors and that the ratio in this case between actual and punitive damages is 2:1, we hold that the jury's award of $300,000 in exemplary damages is not excessive. Appellee's ninth and tenth cross-points of error are overruled. By implication, appellants' ninth point of error is sustained, and the trial court's judgment non obstante veredicto with respect to the award of exemplary damages is reversed.

▇ We now turn to the jury's finding of unconscionability. In cross-points five and six, State Farm Lloyds argues that the evidence was insufficient to support the jury's finding that State Farm Lloyds engaged in unconscionable conduct which was a producing cause of damage to the Nicolaus. The Nicolaus argue in their fifth and sixth points of error that the trial court erred in disregarding the jury's finding of unconscionability.

Unconscionable conduct was defined in the charge as "any act or practice which, to a person's detriment, either: a) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree, or b) results in a gross disparity between the value received and the consideration paid, in a transaction involving the transfer of consideration." This language in the charge in essence tracked the language of Tex.Bus. & Com.Code Ann. § 17.45(5) (Vernon 1987).

Courts have upheld findings of unconscionability when the value contracted for and paid by the consumer was never received, resulting in a gross disparity between the consideration paid by the consumer and the value received. *Allied Gen. Agency, Inc. v. Moody,* 788 S.W.2d 601, 606 (Tex.App.—Dallas 1990, no writ) (citing *Centroplex Ford, Inc. v. Kirby,* 736 S.W.2d 261 (Tex.App.— Austin 1987, no writ) and *R.S. Assoc. Gen. Bldg. Contractors, Inc. v. Devona,* 610

S.W.2d 190 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). In *Moody,* the court stated that the jury could have reasonably concluded that the claimant received a valueless insurance policy when, even though the claimant had been charged and had paid the full premium price, the insurance carrier refused to pay. *Moody,* 788 S.W.2d at 606.

Likewise, the Nicolaus had insured their home with State Farm Lloyds since 1979. At trial, their policy was for approximately $113,000, and they were asking for approximately $102,000 in policy benefits. Instead, they received $1,820 for plumbing repairs. Moreover, State Farm Lloyds never informed them that, under their homeowner's policy, they could have additional living expenses reimbursed in the event that their home became partially unlivable. Based on this evidence, combined with the evidence supporting the breach of the duty of good faith and fair dealing, we cannot say that the evidence supporting the jury's unconscionability finding is so weak as to be clearly wrong and manifestly unjust. *Cain,* 709 S.W.2d at 176. Appellee's fifth and sixth cross-points of error are overruled. By implication, appellant's fifth and sixth points of error are sustained, and the trial court's judgment non obstante veredicto with respect to questions # 5 and # 6 is reversed.

▇ In their tenth point of error, the Nicolaus assert that the trial court erred when it reduced the award of attorneys' fees, because the Nicolaus should have been awarded 40% of the full amount awarded by the jury. The Deceptive Trade Practices Act provides that a consumer who prevails in an unconscionability claim *shall* be awarded court costs and reasonable and necessary attorneys' fees. Tex.Bus. & Com.Code Ann. § 17.50(a)(3) & (d) (Vernon 1987). The Nicolaus' attorney testified regarding reasonable and necessary attorneys' fees, and the jury awarded either 40% of the jury award or $150,000. The Nicolaus elected to accept 40% of the jury award. Because we have affirmed the jury's unconscionability award under the DTPA, the Nicolaus are entitled to receive attorneys' fees in the amount of 40% of the total jury award. The Nicolaus' tenth point of error is sustained.

We decline to address any other points of error or cross-points of error because they are not necessary to the final disposition of this appeal. TEX.R.APP.P. 90(a).

The judgment of the trial court is AFFIRMED with respect to the breach of contract finding and the judgement non obstante veredicto is REVERSED and RENDERED in accordance with the jury award.

NYE, J., not participating.