Jesus GUAJARDO, Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Appellee.

No. 13–91–354–CV.

Court of Appeals of Texas, Corpus Christi.

April 16, 1992.

Opinion on Motion for Rehearing June 10, 1992.

Alfredo Jimenez, Corpus Christi, for appellant.

J. Hampton Skelton, Austin, for appellee.

Before NYE, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

NYE, Chief Justice.

This is a summary judgment case. Pursuant to an appeal of the Industrial Accident Board's award of workers' compensation benefits, appellant, Jesus Guajardo, sued appellee, Liberty Mutual Insurance Company, for benefits due under the Texas Workers' Compensation Law and Liberty Mutual's insurance policy. Mr. Guajardo later amended his pleadings, alleging that Liberty Mutual violated the common-law duty of good faith and fair dealing and art. 21.21 of the Texas Insurance Code when it stopped paying him benefits. The trial court severed the underlying workers' compensation suit from the bad-faith suit. Liberty Mutual moved for summary judgment only on the bad-faith suit, alleging that it had a reasonable basis to deny benefits and

that limitations barred the bad-faith suit. The trial court granted summary judgment. By two points of error, Mr. Guajardo complains that the trial court erred in granting summary judgment. We reverse and remand.

The basis for this present litigation and pending appeal is an on-the-job injury suffered by Jesus Guajardo on December 19, 1986. On that date, Mr. Guajardo was driving an 18–wheel truck for his employer, Trademark Press, when it turned over, landing on its right side. The collision left him suspended inside of the cab by his seat belt. That day, Dr. Tone Johnson examined him in the emergency room. He told Dr. Johnson that he had pain in his right hip, head, forearm, and lower back. X-rays were taken of these areas, and they showed no fractures. Dr. Johnson told him to stay off work for three days. About two days after the collision, Trademark Press told Mr. Guajardo to see a company doctor. He saw the company doctor, who released him to go back to work. However, when he returned to work, he found out that he had been fired. Liberty Mutual, which provided insurance to Mr. Guajardo under a workers' compensation policy issued to his employer, started paying weekly benefits to him on December 20, 1986.

Mr. Guajardo continued to have problems with his back. On January 5, 1987, Mr. Guajardo returned to Dr. Tone Johnson (the doctor who saw him in the emergency room). In a letter to attorney Kathryn Snapka, Dr. Johnson stated that Mr. Guajardo was still partially disabled from the collision and could not return to full employment. He could drive for a short period or distance. Dr. Johnson also stated that Mr. Guajardo had unilateral quadriceps weakness with unilateral low back pain and media thigh pain.

Dr. Johnson referred Mr. Guajardo to Dr. H. Grey Carroll. On January 30, 1987, Dr. Carroll performed a neurological exam on Mr. Guajardo. He reported that Mr. Guajardo had no evidence of nerve compression. He recommended that Mr. Guajardo continue his physical therapy, avoid lifting, use a firm mattress, and practice good posture. He did not say whether Mr. Guajardo could return to work.

On April 3, 1987, Dr. Tone Johnson examined Mr. Guajardo. He reported that Mr. Guajardo had low back pain, right hip pain with initial weakness, cervical spine strain, and secondary sleep disorder. He said that Mr. Guajardo's prognosis was good, that he was improving, and that he expected to end his treatment on April 30, 1987, when he should be able to return to work.

Dr. Johnson also referred Mr. Guajardo to Dr. Blake O'Lavin. On May 7, 1987, Dr. O'Lavin performed a neurological exam on Mr. Guajardo. He reported that Mr. Guajardo had been having back pain since the collision. His impression was that Mr. Guajardo had chronic lumbar strain. He stated that Mr. Guajardo needed to start a home exercise program and lose some weight. He did not say whether Mr. Guajardo could return to work.

On July 21, 1987, Mr. Guajardo saw Dr. Christopher Isensee for an independent exam. Dr. Isensee, an orthopedic surgeon, examined Mr. Guajardo for his complaints of back pain and weakness in the right leg. Dr. Isensee detected no objective findings to relate to Mr. Guajardo's complaints. He had the impression that Mr. Guajardo's symptoms were "substantially overstated." He believed that Mr. Guajardo was able to resume his usual employment as of July 22, 1987.

Liberty Mutual received the written medical reports relating to Mr. Guajardo from Drs. H. Grey Carroll (January 30, 1987), Tone Johnson (April 3, 1987), Blake O'Lavin (May 7, 1987), and Christopher Isensee (July 22, 1987). Pursuant to the information contained in these reports, Liberty Mutual stopped Mr. Guajardo's weekly workers' compensation benefits on July 22, 1987.

On July 30, 1987, Dr. Tone Johnson had Mr. Guajardo undergo a magnetic resonance imaging (MRI) test. The MRI showed that he had degeneration of a disc at L 4–5 level and annular bulge. Dr. Johnson stated that trauma to Mr. Guajar-

do's spine caused the degeneration. He diagnosed Mr. Guajardo as having traumatic degenerative disc disease and referred him to Dr. Miguel Berastain, an orthopedic surgeon.

On September 14, 1987, Dr. Berastain examined Mr. Guajardo and found him minimally symptomatic. He stated that Mr. Guajardo should have been able to resume his regular activities at that time as a truck driver. He said that for a one-year period, Mr. Guajardo should avoid repetitive bending, stooping, heavy lifting (not more than 20 to 30 pounds), and climbing. He felt that driving a truck, or performing the function of driving by itself, would not aggravate his back.

On October 2, 1987, Dr. Johnson wrote a letter to Liberty Mutual. He stated, in relevant part:

The following attached letter was sent to me by Mr. Guajardo, relating Dr. Berastain's exam and concluding opinion in the last paragraph.

In brief the opinion:

I feel the patient [Mr. Guajardo] should be able to return to work. The question is, is the patient ready to return to work?

Able to resume regular activities with any type of limitations or restrictions. This says Mr. Guajardo can do what he normally did prior to his accident. However, later he [Dr. Berastain] states Mr. Guajardo can not or should not do repetitive bending, heavy lifting or stooping permanently, because there is no provision to remove these restrictions.

How can one return to regular activities with physical limitations, and if he has nothing wrong, why does he have limitations? When are these physical limitations going to be lifted so he can return to regular work.

Madam: It is my professional opinion that this matter concerning Mr. Guajardo has been a comedy of errors, and that Mr. Guajardo be granted his compensation.

In his deposition, Dr. Gilbert Meadows said that in September, 1989, Mr. Guajardo had a second MRI test. Dr. Meadows compared the 1989 MRI test with the MRI test which Mr. Guajardo had in July, 1987. Dr. Meadows said that he did not think that Mr. Guajardo could work from 1987.

Mr. Guajardo stated in his affidavit that when Liberty Mutual stopped paying benefits, Dr. Johnson had not released him to return to work and had the opinion that he could not return to work. Liberty Mutual was aware of his medical condition because it received continuous correspondence from his health-care providers. On the advice of Drs. Johnson and Meadows, he had not returned to work since the date of the collision. Additionally, his attorney apprised Liberty Mutual of his need for further medical treatment. He said Liberty Mutual resumed his benefits on October 5, 1989. Since that time, he has had two back surgeries.

On January 7, 1988, Mr. Guajardo sued Liberty Mutual, alleging that it did not pay the benefits due him under the Texas Workers' Compensation Law and Liberty Mutual's insurance policy. On July 13, 1990, he filed his "FIRST AMENDED ORIGINAL PETITION," alleging violations of the common-law duty of good faith and fair dealing and art. 21.21 of the Texas Insurance Code. His bad-faith suit related to Liberty Mutual's suspension of benefits on July 22, 1987.

The trial court severed his underlying workers' compensation claim from his bad-faith suit. Thereafter, Liberty Mutual moved for summary judgment on the bases that Texas law and its summary judgment evidence barred Mr. Guajardo's bad-faith suit. Liberty Mutual contended that its decision to deny Mr. Guajardo's workers' compensation benefits was based on Dr. Isensee's opinion that he could resume his usual employment. Liberty Mutual also alleged that the two-year statute of limitations barred the bad-faith suit.

In response, Mr. Guajardo argued that his summary judgment evidence showed that Liberty Mutual did not have a reasonable basis for delaying or denying benefits. He also contended that Liberty Mutual did

not show that limitations barred his bad-faith suit.

After filing his response, Mr. Guajardo filed a "SECOND AMENDED ORIGINAL PETITION," alleging that Liberty Mutual had *repeatedly breached* its duty to deal fairly and in good faith with him by refusing from July 22, 1987 (the date Liberty Mutual ended his benefits), to October 5, 1989 (the date Liberty Mutual resumed his benefits), to pay benefits when it knew or should have known that no reasonable basis existed for denying or delaying benefits. He asserted that when Dr. Isensee released him to return to work, Liberty Mutual knew or should have known that Dr. Johnson had not released him to return to work and did not believe that he was able to return to work.

The trial court entered a take-nothing summary judgment in Liberty Mutual's favor, from which Mr. Guajardo brings this present appeal.

■■■ By point one, Mr. Guajardo complains that the trial court erred in granting summary judgment because a genuine issue of material fact existed whether Liberty Mutual's denial or delay of benefits constituted a breach of the duty of good faith and fair dealing in processing his workers' compensation claim. A workers' compensation carrier has a duty to deal fairly and in good faith with injured employees in the processing of compensation claims. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212–13 (Tex.1988); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). This duty arises out of the special trust relationship between the insured and the insurer, and is imposed on the insurer due to the disparity of bargaining power and the exclusive control that the insurer exercises over the processing of claims. *Aranda,* 748 S.W.2d at 212; *Arnold,* 725 S.W.2d at 167.

■■■ A workers' compensation claimant who asserts that a carrier has breached the duty of good faith and fair dealing by refusing to pay or delaying payment of a claim must prove: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy; and

(2) that the carrier knew or should have known that a reasonable basis did not exist for denying the claim or delaying payment of the claim. *Aranda,* 748 S.W.2d at 213; *Coleman v. Lumbermens Mut. Casualty Co.*, 786 S.W.2d 445, 447 (Tex.App.—Houston [1st Dist.] 1990, writ denied). *Aranda* explained that:

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct.

*Id.* 748 S.W.2d at 213. In *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129 (Tex.1988), the Court summarized *Aranda*'s holding as establishing breach of the duty of good faith and fair dealing when the insurer fails "to promptly and equitably pay an insured's claim when liability becomes reasonably clear." *Id.* at 135.

■■■ Under the second element of the test, the "special relationship" between the insured and insurer imposes on the insurer a duty to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals that a reasonable basis exists to do so. *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 568 (Tex.1990). Whether a reasonable basis exists for denying a claim must be judged by the facts before the insurer at the time the claim was denied. *Id.* at 567.

In the present case, Liberty Mutual states that it denied workers' compensation benefits to Mr. Guajardo based on Dr. Isensee's report which said that he was able to return to work. Liberty Mutual asserts that a carrier will not be held liable for breach of the common-law duty of good faith and fair dealing if its denial of workers' compensation benefits was based on the carrier's reliance on a medical opinion from which the carrier could have reasonably determined that the claim was invalid or questionable. *Fuentes v. Texas Employers Ins. Ass'n,* 757 S.W.2d 31, 33 (Tex. App.—San Antonio 1988, no writ).[1]

The facts and allegations in this appeal are different than those in *Fuentes.* Mr. Guajardo's summary judgment evidence showed:

1. On October 2, 1987, Dr. Johnson wrote Liberty Mutual a letter, stating that he should be granted workers' compensation benefits.

2. Liberty Mutual was aware of his medical condition because it received *continuous correspondence* from his health-care providers.

3. He did not return to work based upon Dr. Johnson's and Dr. Meadows' advice.

4. His attorney apprised Liberty Mutual of his need for further medical treatment.

5. Dr. Berastain said that for a one-year period, he should avoid repetitive bending, stooping, heavy lifting, and climbing.

6. A disability certificate showed that he was totally incapacitated from December 19, 1986, to July 7, 1989.

7. Dr. Meadows said that he did not think Mr. Guajardo could work from 1987.

8. When Liberty Mutual stopped paying benefits, Dr. Johnson had not released him to return to work and had the opinion that he could not return to work.

■ Prior to the date Liberty Mutual stopped paying benefits, Mr. Guajardo received benefits on a weekly basis. Each week when benefits became payable, Liberty Mutual had the option to pay or not pay them based upon the facts pertaining to Mr. Guajardo's medical condition. If before or after the time Liberty Mutual stopped paying benefits, it had received facts which would have shown that no reasonable basis existed for delaying or denying benefits, then it would have been under a duty to pay the claim. Mr. Guajardo's summary judgment evidence showed that Liberty Mutual was aware that Mr. Guajardo needed benefits after they were stopped, and perhaps at the time they were stopped. This created a fact issue whether Liberty Mutual had a reasonable basis for delaying or denying the claim. A delay may be reasonable when it begins and later become unreasonable and breach the duty of good faith and fair dealing. Reasonable minds may differ on when a delay became unreasonable. *Tectonic Realty Inv. Co. v. CNA Lloyd's of Texas Ins. Co.,* 812 S.W.2d 647, 652 (Tex.App.—Dallas 1991, writ denied).

■ We hold therefore that Liberty Mutual did not meet its summary judgment burden to show that, as a matter of law, it had a reasonable basis to delay or deny Mr. Guajardo's workers' compensation claim from July 22, 1987, to October 5, 1989. TEX.R.CIV.P. 166a(c). Point one is sustained.

By point two, Mr. Guajardo complains that the trial court erred in granting summary judgment on the basis that the two-

1. In *Fuentes,* a workers' compensation carrier stopped paying a worker's benefits pending his appeal of an Industrial Accident Board (IAB) award. After the worker prevailed in his suit to set aside the IAB award, he sued the carrier for breach of the common-law duty of good faith and fair dealing. The carrier moved for summary judgment on the bad-faith claim, which the trial court granted. The appellate court held that the worker's pleadings established that the carrier had a reasonable basis for denying the claim. The pleadings alleged that the denial of the claim was based upon the carrier's reliance on a medical opinion. The appellate court held that reliance upon a medical opinion was a reasonable basis for denying payment, thereby negating the two elements of the bad-faith cause of action.

year statute of limitations barred his bad-faith claims. A two-year limitations period governs a cause of action for breach of the common-law duty of good faith and fair dealing in the processing and payment of insurance claims. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 827 (Tex. 1990); TEX.CIV.PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 1986). The limitations period for claims under art. 21.21 of the Texas Insurance Code is two years. TEX. INS. CODE ANN. art. 21.21 § 16(d) (Vernon Supp.1992). Liberty Mutual pleaded the two-year statute of limitations in bar of Mr. Guajardo's bad-faith claims.

On January 7, 1988, Mr. Guajardo sued Liberty Mutual to collect workers' compensation benefits. On July 13, 1990, he filed his "FIRST AMENDED ORIGINAL PETITION," alleging violations of the common-law duty of good faith and fair dealing and art. 21.21 of the Texas Insurance Code. His bad-faith claims related to Liberty Mutual's suspension of benefits beginning on July 22, 1987.

Texas Civil Practice & Remedies Code Annotated § 16.068 (Vernon 1986) provides:

> If a filed pleading relates to a cause of action, cross action, counter-claim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

▪ The Supreme Court found that the purpose of § 16.068 was to limit the application of the statutes of limitations to amended pleadings. The test is if the amended pleading does not allege a wholly new, distinct, or different transaction, then it relates back to the original filing, and is not subject to a limitations defense. *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex. 1985); *Stevenson v. Koutzarov,* 795 S.W.2d 313, 319 (Tex.App.—Houston [1st Dist.] 1990, writ denied); TEXAS CIVIL PRACTICE & REMEDIES CODE § 16.068 (Vernon 1986). Even if the amended petition alleg-

es new causes of action, the statute of limitations does not bar the new causes unless they arise from a wholly different transaction. *Stevenson,* 795 S.W.2d at 319; *Providence Hosp. v. Truly,* 611 S.W.2d 127, 133–34 (Tex.Civ.App.—Waco 1980, writ dism'd).

▪ Mr. Guajardo's "FIRST AMENDED ORIGINAL PETITION" did not allege a *wholly* new and distinct transaction. The basic complaint was still the same—Liberty Mutual's failure to pay him the benefits due under the Texas Workers' Compensation Law and the insurance policy. The bad-faith suit arose out of the same transaction between Liberty Mutual and Mr. Guajardo. Mr. Guajardo's "FIRST AMENDED ORIGINAL PETITION" was not *wholly based on a new, distinct, or different transaction or occurrence.* The amended petition related back to the filing date of the original petition and was within the two-year limitations period. We hold therefore that the trial court erred in holding that the two-year statute of limitations barred Mr. Guajardo's bad-faith claims. Point two is sustained.

The trial court's judgment is REVERSED and the cause is REMANDED for trial.

### OPINION ON MOTION FOR REHEARING

On rehearing, appellee, Liberty Mutual Insurance Company, complains that we erred in reversing the summary judgment granted in its favor. We address Liberty Mutual's argument that a claims decision which reflects an expert medical opinion is reasonable as a matter of law, without regard to contrary medical opinions made known to the insurer. When an insurance carrier relies on one expert opinion to deny coverage, we would be reluctant to say that it did not have a reasonable basis upon which to deny the claim. *See Fuentes v. Texas Employers Ins. Ass'n,* 757 S.W.2d 31, 33 (Tex.App.—San Antonio 1988, no writ). The carrier must rely on expert opinion in order to make coverage decisions in cases when the question of coverage is dependent upon analysis of technical mat-

ters outside of ordinary experience and within the expert's field of knowledge. An expert's opinion should not be discounted without some reasonable basis to challenge that opinion.

When contrary expert opinion which suggests that coverage should not be denied is placed before the carrier, the carrier must determine which opinion to follow. If the carrier still chooses to deny coverage, it should generally be able to rely on its own expert's opinion as a reasonable basis for the denial, even though that opinion may not prevail against contrary opinion on the ultimate question of coverage. However, situations may arise in which contrary medical opinion casts sufficient doubt on the reliability of the carrier's expert's opinion, that the carrier no longer has a reasonable basis to deny coverage. We believe that the weight of contrary expert opinion necessary to destroy the carrier's reasonable basis is a question of fact for the jury under the standard established in *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212–13 (Tex.1988) and *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987).

Other experts may challenge the credentials or the reliability of the carrier's expert or his professional reputation for sound and impartial opinions. Further, the circumstances under which an expert's opinion is brought to the carrier's attention are also important in determining whether the carrier reasonably relied upon its expert's opinion. For instance, a party may cast doubt on the expert's opinion if it shows that the same expert has consistently rendered opinions favorable to the carrier or other interested parties in the past and that those opinions were later shown to be false or questionable.

A conflict between the carrier's expert and other experts may or may not, standing alone, be sufficient to allow a "bad-faith" suit to go to a jury. In addition to the conflicting expert opinion, the party alleging bad faith must also bring

direct or circumstantial evidence showing that the carrier's expert's opinion was questionable and that the carrier knew or should have known that the opinion was questionable.

In the present case, Dr. Johnson's letter to Liberty, dated October 2, 1987, characterized the matter involving Mr. Guajardo as a "comedy of errors" and stated that Mr. Guajardo should have been granted his compensation. Dr. Johnson's letter casts doubt upon the medical opinions of Drs. Isensee and Berastain who stated that Mr. Guajardo could have returned to work as a truck driver. Dr. Berastain described his examination of Mr. Guajardo in a letter dated October 27, 1987.[1] In that letter, he stated that Mr. Guajardo should not have engaged in repetitive bending, stooping, heavy lifting (not more than 20–30 pounds), and climbing. He also stated that these activities would have been detrimental to Mr. Guajardo's back condition.

If Dr. Johnson's letter and Dr. Berastain's letter can be read consistently with Dr. Isensee's opinion to show that Mr. Guajardo had certain physical limitations, but that a disagreement existed on whether those limitations would have prevented Mr. Guajardo from returning to work, then Liberty was under a duty to investigate whether the limitations would have prevented Mr. Guajardo from returning to work as a truck driver.

We OVERRULE the Motion for Rehearing.

---

1. This letter was addressed to attorney Shannon Salyer and copied to Liberty Mutual Insurance. The letter is attached to Mr. Guajardo's "RESPONSE TO MOTION FOR SUMMARY JUDGMENT."