**Angelo Loiza RAMIREZ, Appellant,**

v.

**TRANSCONTINENTAL INSURANCE COMPANY, Appellee.**

Court of Appeals of Texas, Houston (14th Dist.).

A–14–93–00961–CV.

July 21, 1994.

Rehearing Denied Aug. 11, 1994.

Sophia A. Mafrige, Houston, for appellant.

James D. Ebanks, John B. Wallace, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## MAJORITY OPINION

J. CURTISS BROWN, Chief Justice.

This is a summary judgment case. Angelo Loiza Ramirez (Ramirez), appellant, sued Transcontinental Insurance Company (TIC), appellee, for breach of the duty of good faith and fair dealing in handling his workers' compensation claim. TIC filed a motion for summary judgment and it was granted by the trial court. Ramirez brings one point of error asserting that the trial court erred in granting TIC's motion for summary judgment. We affirm.

On or about July 12, 1989, Ramirez, a landscape laborer for Magnolia Gardens Nursery (Magnolia), was unloading a truck when he allegedly fell, striking and injuring the right side of his face. Ramirez claims that the accident aggravated a condition of the jaw known as temporomandibular joint (TMJ) syndrome. Ramirez filed a claim for workers' compensation benefits with TIC,

Magnolia's workers' compensation carrier. Although it did not issue a formal denial, TIC declined to pay workers' compensation benefits to Ramirez.

The claim was brought before the Texas Workers' Compensation Commission (TWCC).[1] On February 23, 1990, the TWCC found that Ramirez suffered an injury in the course and scope of his employment and awarded $15,590.23 to Ramirez. The award was appealed to the district court and suit was filed. In July 1990, Ramirez and TIC settled the workers' compensation claim; however, Ramirez filed suit a month later against TIC for breach of the duty of good faith and fair dealing. On January 13, 1993, TIC filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law because it had a reasonable basis to deny Ramirez's claim based on the information available to it at the time. Ramirez filed a response and supplemental response to TIC's motion. The trial court granted TIC's summary judgment motion on July 1, 1993, and Ramirez appealed.

In his sole point of error, Ramirez contends that the trial court erred in granting summary judgment in favor of TIC "because genuine issues of material fact existed as to whether [TIC] had a reasonable basis for denying benefits and [TIC] failed to establish it is entitled to judgment as a matter of law."

The standard of review for summary judgments is well-established. A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, the court indulging every reasonable inference and resolving any doubts in favor of the

---

1. Section 16.01 of the act repealing article 8307 changed the name of the Industrial Accident Board to the Texas Workers' Compensation Commission. Act of March 28, 1917, 35th Leg., R.S., ch. 103, part II, § 1, 1917 Tex.Gen. laws 269, 281–82, *repealed by* Act of December 13, 1989, 71st Leg., 2nd C.S. ch. 1, § 16.01, 1989 Tex.Gen.Laws 1, 115. Thus, any reference in statutes or cases to the Industrial Accident Board now means the Texas Workers' Compensation Commission. *Id.*

non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310. In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–29 (Tex. 1970). If the appellate court finds the movant has not met its burden, it must reverse and remand the case for further proceedings. *Gibbs,* 450 S.W.2d at 828–29. To prevail on summary judgment, a defendant, as the movant, must establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Id.* at 828.

In *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987), the Texas Supreme Court recognized a duty on the part of insurers to deal fairly and in good faith with their insureds. In *Aranda v. Insurance Co. of North Am.,* 748 S.W.2d 210, 212–13 (Tex.1988), this duty was recognized in the context of a claim by an employee for benefits arising under a workers' compensation insurance contract. The court held that "there is a duty on the part of workers' compensation carriers to deal fairly and in good faith with injured employees in the processing of compensation claims." *Id.*

■ A claimant who asserts that a workers' compensation carrier has breached its duty of good faith fair dealing by refusing to pay or delaying payment of a claim must show that:

(1) the workers' compensation carrier had no reasonable basis to deny or delay payment of benefits of the policy; *and*

(2) the carrier *knew or should have known* that there was no reasonable basis for denying or delaying payment of the claim.

*Id.* at 213. [emphasis in original]

■ The first part of the test requires an objective determination of whether a reasonable workers' compensation carrier under similar circumstances, would have denied or delayed payment. *Id.* The second part of the test balances the right of the insurer to reject invalid claims against its duty to investigate and pay compensable claims. *Id.* The second part of the test is met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or deny payment, or that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. *Id.*[2]

■ Under the test, insurance carriers maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. *Id.* "In other words, if the insurer has denied what is later determined to be a valid claim under the contract of insurance, the insurer must respond in actual damages up to the policy limits." *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993). "But as long as the insurer has a reasonable basis to deny or delay payment of the claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* Whether there is no reasonable basis for denial must be judged by the facts before the insurer at the time it handled the claim. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990); *State Farm Lloyds Ins. v. Polasek,* 847 S.W.2d 279, 287 (Tex.App.— San Antonio 1992, writ denied).

In the instant case, TIC denied benefits to Ramirez because there were questions not only about whether Ramirez's TMJ syndrome was aggravated by the accident, but also about whether the accident actually occurred. In other words, there were questions about coverage under the insurance contract. The Texas Supreme Court has recently clarified the distinction between a claim for breach of the insurance contract and a claim for breach of the duty of good faith and fair dealing. In *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex.1994) (opinion on motion for rehearing), the court explained:

**2.** Contrary to Ramirez's assertion, TIC's summary judgment motion and reply clearly encompass both parts of the *Aranda* test.

... 'A breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract.' The contract aspect of a coverage dispute concerns either the factual basis for the claim, the proper legal interpretation of the policy, or both. If the loss is covered, then the insurer is obligated to pay the claim according to the terms of the insurance contract. The threshold of bad faith is reached when a breach of contract is accompanied by an independent tort. Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Nor is bad faith established when the jury, with the benefit of hindsight, decides that the insurer was simply wrong about the factual basis for its denial of the claim, or about the proper construction of the policy. A simple disagreement among experts about whether the cause of the loss is one covered by the policy, will not support a judgment for bad faith. To the contrary, an insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact.

879 S.W.2d at 17 [citations omitted]

*Moriel* cites two important cases previously decided by the court and relied upon by TIC: *Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597 (Tex.1993) and *National Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373 (Tex.1994).

In *Lyons*, the court held that there was no evidence to support the jury's finding that the insurance carrier breached the duty of good faith and fair dealing. 866 S.W.2d at 601. *Lyons* involved a dispute about whether the damage to the claimant's house was caused by a windstorm, a covered peril, or as the carrier claimed, by settling of the foundation, an excluded peril. *Id.* at 598. The carrier denied the claim based on two inspection reports; one by a reconstruction expert and another by a registered professional engineer. *Id.* at 599. The court observed that at the trial, the evidence offered by the claimant in support of the bad faith finding

consisted of an expert's opinion that the windstorm caused the damage and testimony by the claimant and her neighbors that the brick veneer and outside back staircase were visibly damaged after the storm. *Id.* at 600–601. The court noted that this evidence supported the jury's finding that the claimant's damage was covered by the policy and that the carrier was mistaken as to its contractual liability. *Id.* at 601.

However, the court explained that the issue of bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. *Id.* The court further explained that evidence of coverage might in some circumstances support a finding that an insurer lacked any reasonable basis for denying a claim, for example, when the insurer unreasonably disregards the evidence of coverage. *Id.* The court observed that the claimant offered no evidence that the reports of the carrier's experts were not objectively prepared, or that the carrier's reliance on them was unreasonable, or any other evidence from which a factfinder could infer that the carrier acted without a reasonable basis and that it knew or should have known that it lacked a reasonable basis for its actions. *Id.*

Likewise, in *Dominguez*, the court held that there was no evidence to support the jury's finding that the insurance carrier breached the duty of good faith and fair dealing. 873 S.W.2d at 373. *Dominguez* involved a dispute about whether the claimant's back injury was work-related for purposes of establishing the claimant's entitlement to workers' compensation benefits. *Id.* at 374–75. The doctor who had initially seen the claimant diagnosed his back pain as stemming from a degenerative condition. *Id.* at 375. However, a second doctor had given his opinion that the claimant's condition was work-related. *Id.* The court noted that at the trial, the only evidence offered by the claimant to establish bad faith was a letter by a doctor to the claimant's attorney, stating his opinion that the injury was work-related. *Id.* at 376–77.

The court concluded that while the letter was some evidence of coverage, it was not evidence of an absence of a reasonable basis

for denying the claim. *Id.* at 377. The court observed that the claimant presented no evidence that cast doubt upon the carrier's reliance on the medical professionals who diagnosed the condition as a degenerative disease and the claimant's own statements on disability insurance forms that his condition was not work-related. *Id.*

In both *Lyons* and *Dominguez*, the court adopted "a particularized application of our traditional no evidence review." *See Lyons*, 866 S.W.2d at 600. The court held that "when a court is reviewing the legal sufficiency of the evidence supporting a bad faith finding, its focus should be on the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith." *Dominguez*, 873 S.W.2d at 376 (*citing Lyons*, 866 S.W.2d at 600). In other words, "the evidence must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage." *Dominguez*, 873 S.W.2d at 378 (*quoting Lyons*, 866 S.W.2d at 600). The court explained that "this focus on the evidence and its relation to the elements of bad faith is necessary to maintain the distinction between a contract claim on the policy, and a claim of bad faith delay or denial of that claim, which arises from the tort duty we imposed on insurers in *Arnold* and *Aranda*." *Id.*[3]

■ Ramirez asserts that *Lyons* and *Dominguez* are inapplicable to this summary judgment case because they involved a legal sufficiency review of the evidence supporting a jury's finding of bad faith. We disagree. We are aware that unlike a jury or bench trial, the usual presumption that the judgment is correct does not apply to summary judgments. *See* Wendall Hall, *Revisiting Standards of Review In Civil Appeals*, 24 St. Mary's L.J. 1045, 1089 (1993). However, in both *Lyons* and *Dominguez*, a jury found in favor of the insured and the court considered only the evidence in support of the jury's finding, disregarding all evidence and inferences to the contrary. *Dominguez*, 873 S.W.2d at 376; *Lyons*, 866 S.W.2d at 600. Our review is no different here. Because summary judgment was granted in favor of the insurer, the movant, we must take the evidence favorable to the insured, the nonmovant, as true, indulging every reasonable inference and resolving all doubts in favor of the insured. *See Union Bankers Ins. Co. v. Shelton*, 37 Sup.Ct.J. 1138, 1146, 1994 WL 278131 (June 22, 1994) (Justice Cornyn concurring and dissenting opinion); *see also Nixon*, 690 S.W.2d at 548-49. In addition, whether our review involves a jury's verdict or a summary judgment, we must focus on the evidence only as it relates to the elements of bad faith. *Dominguez*, 873 S.W.2d at 376; *Lyons*, 866 S.W.2d at 600. Hence, we find that *Lyons* and *Dominguez* are instructive in this case.

■ Under *Lyons*, *Dominguez*, and now *Moriel*, a legal sufficiency review of a bad faith claim requires that the evidence relied on by the insured as evidence of bad faith 'must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim and that it knew or should have known it had no reasonable basis for its actions.' *Dominguez*, 873 S.W.2d at 376 (*quoting Lyons*, 866 S.W.2d at 600). However, before conducting such a review, an appellate court must first determine what potential basis an insurance company may have had for denying a claim. *See Dominguez*, 873 S.W.2d at 376.

In the instant case, TIC's summary judgment proof included: 1) a disability certificate from the Latin American Medical &

---

**3.** The Supreme Court essentially adopted the approach taken in *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279 (Tex.App.—San Antonio 1992, writ denied). That is, courts and juries do not weigh the conflicting evidence that was before the insurer; rather, they decide whether evidence existed to justify denial of the claim. 847 S.W.2d at 285. In other words, the issue under a no-evidence review is not whether there is "some evidence" that there was not a reasonable basis for denial, but whether there was *no reasonable basis* for denial. *See id.* at 284-85 (emphasis added); *see also Emmert v. Progressive County Mutual*, 882 S.W.2d 32 (Tex.App.—Tyler 1994, n.w.h.) (holding that the "some evidence" analysis adopted by some of the Courts of Appeal has been repudiated by the Supreme Court and noting that under *Polasek*, the bad faith cause of action requires much more demanding proof than the suit on an insurance policy).

Surgical Clinic dated August 8, 1989, stating that Ramirez was able to return to work without restriction; 2) several reports by Dr. Iraj Rejaie and an MRI report from Dr. Thomas Gillespie reflecting that Ramirez had a TMJ anomaly that was the result of "longstanding arthritic changes;" 3) statements by co-workers that they did not see the alleged accident and that Ramirez was having problems with his jaw prior to the alleged accident; and 4) Dr. Rejaie's deposition testimony stating that he did not find evidence of recent trauma and emphasizing the findings in his earlier reports that the alleged accident did not cause Ramirez's injury.

According to Ramirez, the summary judgment proof establishes a fact issue as to whether TIC had "no reasonable basis" for denial because: (1) there was conflicting expert opinion concerning whether Ramirez's TMJ syndrome was aggravated by the alleged accident and a compensable injury under the Texas Workers' Compensation Act includes aggravation of a pre-existing condition; (2) TIC's investigation of Ramirez's claim was inadequate and "outcome oriented;" and (3) affidavit testimony from Ramirez's expert established that TIC had no reasonable basis for denial.

### Conflicting Expert Opinion

Ramirez argues that TIC's reliance on Dr. Rejaie's opinion was unreasonable. TIC's summary judgment proof shows that its denial was based in part on Dr. Rejaie's conclusion that Ramirez's TMJ syndrome was pre-existing and not work-related. According to Dr. Rejaie, there was no evidence of recent trauma to the right side of Ramirez's face in the form of a wound or swelling of the soft tissue and if Ramirez suffered any recent trauma, it did not cause acute injury or change the chronic, longstanding nature of Ramirez's condition. In other words, Dr. Rejaie concluded that Ramirez's condition was not compensable under TIC's policy.

However, Ramirez points out that TIC also possessed medical reports from a dentist, Dr. Hal Phillips, who suggested that Ramirez's TMJ syndrome was aggravated by the alleged accident and therefore, was compensable. Ramirez cites *Guajardo v. Liberty Mut.*

*Ins. Co.*, 831 S.W.2d 358 (Tex.App.—Corpus Christi 1992, writ denied), for the proposition that summary judgment is improper when there are conflicting medical opinions.

In *Guajardo*, the court reversed a summary judgment in favor of the workers' compensation carrier on a bad faith claim. 831 S.W.2d at 360. The carrier denied benefits based on one doctor's opinion that the claimant could resume his usual employment, even though the carrier was aware of several contrary medical opinions. *Id.* at 360–61. The court observed that "situations may arise in which contrary medical opinion casts sufficient doubt on the reliability of the carrier's expert's opinion, that the carrier no longer has a reasonable basis to deny coverage." 831 S.W.2d at 365 (opinion on motion for rehearing). The court explained:

> Other experts may challenge the credentials or the reliability of the carrier's expert or his professional reputation for sound and impartial opinions. Further, the circumstances under which an expert's opinion is brought to the carrier's attention are also important in determining whether the carrier reasonably relied upon it's expert opinion. For instance, a party may cast doubt on the expert's opinion if it shows that the same expert has consistently rendered opinions favorable to the carrier or other interested parties in the past and that those opinions were later shown to be false or questionable.

*Id.*

The court concluded, "we believe that the weight of contrary expert opinion necessary to destroy the carrier's reasonable basis is a question of fact under the standard established in *Aranda* ... and *Arnold* ...." However, the court added:

> A conflict between the carrier's expert and other experts may or may not standing alone, be sufficient to allow a 'bad faith' suit to go to a jury. In addition to the conflicting expert opinion, the party alleging bad faith must also bring direct and circumstantial evidence showing that the carrier's expert's opinion was questionable

826

and that the carrier knew or should have known that the opinion was questionable. *Id.*

Contrary to Ramirez's argument, *Guajardo* does not hold that conflicting expert opinions automatically create a fact issue as to bad faith. Rather, *Guajardo* holds that a fact issue may be present only in certain circumstances where the reasonableness of the carrier's reliance on an expert is seriously called into question by an opposing expert or other evidence. Although *Guajardo* was decided before *Lyons, Dominguez* and *Moriel,* it is consistent with the standard for bad faith set forth by the Supreme Court; that is, the evidence must demonstrate that the insurance carrier's reliance on certain information in denying a claim is unreasonable and therefore, does not constitute a reasonable basis for denial. *See Dominguez,* 873 S.W.2d at 377; *see also Lyons,* 866 S.W.2d at 601.

■ Ramirez, citing to Dr. Rejaie's deposition testimony and to an entry in the claim file[4] dated October 27, 1989, asserts that TIC's reliance on Dr. Rejaie did not constitute a reasonable basis for denial because he was not an expert in diagnosing TMJ syndrome. The summary judgment proof, however, reflects that TIC's reliance on Dr. Rejaie's *medical ability constituted a reasonable basis as a matter of law.* The entry in the claim file cited by Ramirez states that Dr. Rejaie referred Ramirez to an oral surgeon "because he was not an expert;" however, Dr. Rejaie never said that he was not an expert in *diagnosing* TMJ syndrome. In fact, he testified that as a plastic and maxillofacial surgeon, he regularly diagnoses TMJ syndrome. Dr. Rejaie merely stated that he did not normally *treat* TMJ syndrome.

Furthermore, Ramirez, not TIC, chose Dr. Rejaie. Dr. Rejaie's conclusion that Ramirez's TMJ syndrome was not work-related was based on several examinations of Ramirez as well as X-rays, a tomogram, and Dr. Gillespie's MRI report. Dr. Phillips did not question the results of those examinations or radiological studies. Dr. Phillips also did not dispute or criticize Dr. Rejaie's conclusions or attack his credentials or impartiality. He simply based much of his opinion on information obtained from Ramirez. We find that TIC conclusively established that its reliance on Dr. Rejaie was a reasonable basis for denying Ramirez's claim.

### Investigation

Ramirez also contends, citing *Nationwide Mut. Ins. v. Crowe,* 857 S.W.2d 644, 649, n. 1 (Tex.App.—Houston [14th Dist.] 1993), *judgm't set aside pursuant to sett'l agr.,* 863 S.W.2d 462 (Tex.1993), that TIC did not have a reasonable basis for denial because the denial was based solely on evidence that Ramirez had a pre-existing condition. Ramirez and TIC agree that an on-the-job injury that aggravates a pre-existing condition is compensable under the Workers' Compensation Act. *See McCartney v. Aetna Casualty & Surety Co.,* 362 S.W.2d 838, 839 n. 3 (Tex.1962); *see also* 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 18.01 (1989). Ramirez, referring to the deposition testimony of adjuster, Paula Powell, further points out that TIC was aware of this fact at the time it handled the claim.

■ In *Crowe,* this court affirmed a judgment in favor of the claimants on their bad faith claim. 857 S.W.2d at 647. Mr. Crowe suffered a heart attack at work and died. *Id.* The workers' compensation carrier denied the claim based solely on the death certificate. *Id.* The death certificate listed only the immediate cause of death and at most, established that Mr. Crowe had a pre-existing heart condition. *Id.* at 649. The carrier, however, made no attempt to investigate whether Mr. Crowe's condition was aggravated by an injury in the course and scope of his employment and therefore, was compensable. *Id.* Thus, *Crowe* does not prohibit a workers' compensation insurance carrier from denying coverage solely on the basis of a pre-existing condition. Rather, it merely requires the carrier, before denying a claim on

4. Ramirez offered TIC's claim file as summary judgment proof through the deposition of adjustor, Paula Powell. That deposition was offered without objection in Ramirez's Statement of Intent To Use Discovery As Summary Judgment Evidence which was attached to his Supplemental Response. *See* TEX.R.CIV.P. 166a(d).

such a basis, to conduct an investigation to determine whether that condition might be compensable, i.e., was aggravated by an injury in the course and scope of employment.

In the instant case, TIC conducted such an investigation. Here, Dr. Phillips' opinion differed from Dr. Rejaie's in one important respect; that Ramirez was unfit for work as a result of TMJ syndrome aggravated by an injury suffered at work in July 1989. The foundation for this difference is the history given to Dr. Phillips by Ramirez, stating that he suffered a blow to the head while at work and that he was asymptomatic and able to work before the accident. Dr. Phillips did not dispute that Ramirez's TMJ syndrome was pre-existing nor did he point to any evidence of recent trauma to Ramirez's face. Indeed, the only summary judgment proof on the latter point is Dr. Rejaie's deposition testimony that he found no evidence of recent trauma and Dr. Gillespie's MRI report, stating that Ramirez's TMJ syndrome was "compatible with long standing arthritic disease of undetermined etiology, possibly related to *remote trauma* and degenerative changes." [emphasis added]

Thus, the medical evidence, when viewed in the light most favorable to Ramirez, established that he had a pre-existing condition and that he was unable to work, but was at best inconclusive as to whether Ramirez's condition was compensable under the TIC policy. As a result, TIC proceeded with its investigation by procuring statements from five of Ramirez's co-workers. Two of those co-workers, Danny Peet and Jose Cordova, stated that they learned of the accident shortly after it was alleged to have occurred. However, neither Peet nor Cordova witnessed the accident. Co-workers, Peet, Vince Salazar, Mike Viner, and Hadley Palmer, all stated that Ramirez was symptomatic before the accident. In fact, Salazar stated that Ramirez was "holding his neck" and "popping his jaw" and that Ramirez told him "it was from an old injury." Palmer stated that he noticed prior to the accident that Ramirez had a problem with his neck or jaw and that Ramirez told him that "he had a problem with it." There is nothing in the record which demonstrates that these statements are untrustworthy or that TIC's reliance on them was otherwise unreasonable. The statements of Ramirez's co-workers were in direct conflict with Dr. Phillips' conclusion and raised legitimate questions about Ramirez's veracity and about the basis for Dr. Phillips' opinion.

Ramirez argues, citing *State Farm Fire & Casualty Co. v. Simmons,* 857 S.W.2d 126 (Tex.App.—Beaumont 1993, writ denied) and *Commonwealth Lloyds Ins. Co. v. Thomas,* 825 S.W.2d 135 (Tex.App.—Dallas 1992), *judgm't set aside pursuant to settl't agr.,* 843 S.W.2d 486 (Tex.1993), that TIC's investigation was "outcome oriented" because it questioned his claim from the outset. In support of his assertion, Ramirez cites to various portions of TIC's claim file which refer to Ramirez's claim as "questionable" and of "nuisance value." Ramirez also cites to the affidavit of TIC claims consultant, Peggy Whitley, which states the basis for TIC's denial, but does not mention Dr. Phillips' conclusion.

*Simmons* and *Thomas* are both arson cases. In *Simmons,* the insurance carrier denied the claim after ignoring investigative leads that suggested that someone other than the claimants might have set the fire. 857 S.W.2d at 135–36. Likewise, in *Thomas,* the insurance carrier denied the claim after ignoring information in its investigation that suggested that the fire was not caused by arson. 825 S.W.2d at 145.

Here, there is nothing in the record to suggest that TIC ignored important evidence in its investigation; in particular, Dr. Phillips' conclusion that Ramirez's TMJ syndrome was aggravated by the accident. As we stated, Dr. Rejaie's opinion that Ramirez's condition was not work-related was based on examinations of Ramirez and radiological studies. Dr. Phillips' contrary opinion was based in part, on Ramirez's history as given to him by Ramirez himself. The summary judgment proof, reflects that TIC was aware of this conflict. To verify the accuracy of the history given by Ramirez, TIC interviewed Ramirez's co-workers. As we described, their statements cast doubt upon the validity of Ramirez's claim.

There was additional summary judgment proof that rendered Ramirez's claim suspect. Besides the co-workers' statements and the conflicting conclusions of Drs. Rejaie and Phillips, there was proof that Ramirez did not seek medical treatment until nearly a month after the alleged accident. Also, the Employer's Notice of Injury was not filed until August 30, 1989. On the other hand, there are documents in the summary judgment proof that suggest that Ramirez could have suffered a recent trauma at work. However, like Dr. Phillips' reports, the information about the cause of Ramirez's injury contained in those documents is based on questionable facts provided by Ramirez himself. Further, even if Ramirez was involved in an accident at work, Dr. Rejaie was of the opinion that the accident did not change the longstanding, chronic nature of Ramirez's TMJ syndrome. More importantly, this conflicting evidence regarding coverage merely shows a bona fide dispute about TIC's liability on the insurance contract, not bad faith. *See Moriel,* 879 S.W.2d at 17. TIC was entitled to give an erroneous answer to the question of coverage without subjecting itself to liability for bad faith. *See Lyons,* 866 S.W.2d at 600.

Finally, Ramirez points out that TIC was aware that Ramirez missed time at work and that surgery was contemplated by doctors. That fact, however, does not mean that TIC's investigation was unfair. To the contrary, it merely suggests that Ramirez's condition may have been compensable and that TIC needed to conduct a investigation to make that determination. Nor is TIC's investigation faulty or its reliance on Dr. Rejaie unreasonable simply because medical information from Dr. Phillips might have been received first.[5] Both doctors treated Ramirez and TIC was obligated to obtain the conclusions of each before determining whether to deny or delay benefits. We find that TIC's investigation of the cause of Ramirez's condition conclusively established that its denial was not in bad faith.

### Other Evidence

▮ Lastly, Ramirez contends that the affidavit from his attorney, Ronald J. Kormanik, raises a fact issue regarding whether TIC had a reasonable basis for denial. That affidavit was attached to Ramirez's supplemental response. Mr. Kormanik claimed to be an expert in workers' compensation matters and represented Ramirez in his compensation claim. He also represented Ramirez in his bad faith claim and was the attorney of record when Ramirez filed his response to TIC's Motion for Summary Judgment. Thus, Mr. Kormanik was an interested witness. *See General Prod. Co. v. Black Coral Inv.,* 715 S.W.2d 121, 123 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (an interested witness is one who would be benefitted in some manner by the outcome of a suit in favor of one side or the other). Ramirez cites the following portion of the affidavit:

> After reviewing the discovery in the Angelo Loiza Ramirez file I am of the opinion that the insurance company had no reasonable basis for denying benefits to Angelo Loiza Ramirez and, the insurance company knew, or should have known, that there was no such reasonable basis for denying benefits to Angelo Loiza Ramirez.

▮ TIC filed written objections to the Kormanik affidavit, asserting that it contained only legal conclusions and was incompetent summary judgment proof. However, TIC failed to obtain a ruling on those objections. Thus, Ramirez contends that error was not preserved. According to Ramirez, the affidavit is uncontroverted and raises a material issue of fact as to whether TIC breached its duty of good faith and fair dealing. *See* Tex.R.Civ.P. 166a(b).

---

5. The affidavit of Ramirez's attorney, Ronald Kormanik, states that TIC repeatedly told him that it did not have medical information to support Ramirez's non-work status when in fact medical information from Dr. Phillips, indicating non-work status, had apparently been sent to TIC. Aside from the fact that this statement is hearsay and inadmissible, it does not mean, even if true, that TIC ignored Dr. Phillips' conclusions and acted in bad faith. Rather, it merely shows TIC's attempts to investigate Ramirez's claim or, as the summary judgment proof suggests, that there was confusion and uncertainty about when TIC received certain medical information.

■ Objections to defects in the form of affidavits must be raised in the trial court. TEX.R.CIV.P. 166a(f). However, objections to defects in the substance of affidavits may be raised for the first time on appeal. *Schultz v. General Motors Acceptance Corp.,* 704 S.W.2d 797, 800–801 (Tex.App.—Dallas 1985, no writ) (Justice Howell concurring); *Habern v. Commonwealth Nat'l Bank,* 479 S.W.2d 99, 100–101 (Tex.Civ.App.—Dallas 1972, no writ). An objection to an affidavit on grounds that it states only a legal conclusion is one that relates to a defect of substance. *Bell v. Moores,* 832 S.W.2d 749 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Schultz,* 704 S.W.2d at 801; *Habern,* 479 S.W.2d at 101. Thus, TIC's complaint about the Kormanik affidavit is properly before this court.

■ The above quoted portion of the Kormanik affidavit states a legal conclusion and is incompetent summary judgment proof. *See Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991) (conclusory statements made by an expert witness are insufficient to support summary judgment). Likewise, statements by Mr. Kormanik in the remainder of his affidavit that Dr. Rejaie was "a self-professed non-expert," that TIC "failed to properly investigate this claim," and that it was "impossible for Ramirez to assist TIC in its investigation" in the absence of a formal controversion, are nothing more than opinions and conclusions having no foundation in the record. As we discussed, the summary judgment proof conclusively establishes that Dr. Rejaie was qualified to diagnose Ramirez's TMJ syndrome and that TIC properly investigated Ramirez's claim. Neither statements of opinion nor conclusions in affidavits are competent summary judgment proof. *Id.; Charter Roofing Co. v. Tri–State Ins. Co.,* 841 S.W.2d 903, 906 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

We hold that Dr. Rejaie's opinion, Dr. Gillespie's MRI report, and the statements of Ramirez's co-workers established a reasonable basis for TIC to deny Ramirez's claim and therefore, that TIC was entitled to judgment on Ramirez's bad faith claim as a matter of law. Because the summary judgment was proper, we overrule Ramirez's sole point

of error and affirm the judgment of the trial court.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the majority members of the panel, I respectfully file my dissent.

A dispute about whether there is no reasonable basis to support the denial of a claim is a fact issue for the jury. *See Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 603 (Tex.1993) (Justice Doggett dissenting); *Nationwide Mut. Ins. v. Crowe,* 857 S.W.2d 644, 648 (Tex.App.—Houston [14th Dist.] 1993), *judgm't set aside pursuant to settl't agr.,* 863 S.W.2d 462 (Tex.1993); *Commonwealth Lloyds Ins. Co. v. Thomas,* 825 S.W.2d 135, 144 (Tex.App.—Dallas 1992), *judgm't set aside pursuant to settl't agr.,* 843 S.W.2d 486 (Tex.1993).

In this summary judgment case, TIC has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In addition, the proof favorable to the non-movant, Ramirez, is taken as true, the court indulging every reasonable inference and resolving any doubts in favor of Ramirez. *See id.*

In the instant case, Dr. Phillips' opinion that Ramirez's TMJ syndrome was aggravated by an injury in the course and scope of his employment and the circumstances under which that opinion was brought to TIC's attention is sufficient to raise a fact issue as to whether TIC's reliance on Dr. Rejaie was a reasonable basis for denying Ramirez's claim. *See Guajardo v. Liberty Mut. Ins. Co.,* 831 S.W.2d 358, 365 (Tex.App.—Corpus Christi 1992, writ denied) (opinion on motion for rehearing).

TIC's adjustor, Paula Powell, testified at her deposition that she was uncertain about when TIC received the first medical information from Dr. Phillips. However, a copy of Dr. Phillips' initial report, stating that Ramirez "should avoid work situations," reflects that it was sent to TIC on September 15, 1989. Thus, it is reasonable to infer that TIC received medical information from Dr.

Phillips shortly after it was sent in September. Yet, the October 27, 1889, entry in TIC's claim file curiously notes that TIC told Ramirez's attorney that it did not have medical information to support Ramirez's "non-work status."[1] At that time, TIC had nothing more than a verbal report from Dr. Rejaie. That verbal report, as documented in TIC's claim file, states in pertinent part:

> Dr. Rejaie called back and advised in his opinion [sic] clmt's [sic] condition [sic] not related to work incident and he's [sic] not disabled from work due to his condition—he doubts you can "aggravate" a [sic] TMJ [sic] as it already exists—he will provide a report stating his opinion [sic] however [sic] *he is not an expert and that is why he referred clmt* [sic] *to Dr Morgan who will tell it as he sees it.* [emphasis added]

Clearly, TIC thought that Dr. Rejaie's opinion regarding the cause of Ramirez's TMJ syndrome was qualified by his limited expertise concerning TMJ syndrome. This fact is supported by Dr. Rejaie's own deposition testimony that he did not ordinarily treat TMJ syndrome. The fact that Dr. Rejaie possessed the ability to diagnose the problem does not, as the majority suggests, conclusively establish that TIC's reliance on Dr. Rejaie's opinion as to the cause of Ramirez's condition was a reasonable basis. TIC also knew as reflected by the October 9, 1989, entry in it's claim file, that Dr. Morgan's office (Dr. Phillips was with Dr. Morgan) wanted to perform surgery on Ramirez. Thus, the summary judgment proof establishes that TIC was aware of Dr. Rejaie's limited expertise and that it knew that a doctor with the expertise to treat TMJ syndrome had concluded that Ramirez's TMJ syndrome was work-related and that Ramirez would require surgery which would disable him. Because TIC was aware of

these facts, it focused it's investigation on Ramirez's candor in relaying his history to Dr. Phillips, rather than on the substance of Dr. Phillips' conclusion or his clinical findings. After conducting that investigation, TIC never issued a formal denial explaining to Ramirez why his claim was denied.

Therefore, I would hold that the conflicting medical opinion, the circumstances surrounding the receipt of medical information, and the manner of the resulting investigation and refusal to pay benefits in this case is sufficient to raise a fact issue as to whether TIC's reliance on the information before it did not constitute a reasonable basis for denying Ramirez's claim and whether TIC knew or should of known that it did not have a reasonable basis. *See Guajardo,* 831 S.W.2d at 365. Accordingly, I would reverse the summary judgment in favor of TIC and remand this case for further proceedings consistent with this opinion.

---

1. Further, Ronald Kormanik's affidavit adds suspicion to TIC's conduct. That affidavit states in pertinent part:

   > The insurance company repeatedly told me prior to [the] pre hearing conference that they did not have medical to support Mr. Ramirez *being in an off-work status,* however the file shows that Dr. Phillips sent records to the insurance company explaining the off-work status, and furthermore that I sent the same information by fax to the insurance company.

The pre-hearing conference was not until February 1990. Mr. Kormanik's statement about what TIC told him up to that time is inadmissible hearsay, but is a "defect in form" requiring an objection. Tex.R.Civ.P. 166a(f); *See Dolenz v. A.B.,* 742 S.W.2d 82, 83–84, n. 2 (Tex.App.—Dallas 1987, writ denied). TIC did not make such a hearsay objection and therefore, the statement does not lose its probative value for purposes of summary judgment. *See id.* (citing Tex. R.Civ.Evid 802).